PEOPLE v COYLE

Docket No. 45446. Submitted November 14, 1980, at Detroit.—Decided
    March 17, 1981.

Ricky Coyle was convicted of breaking and entering in the Wayne
    Circuit Court, John R. Kirwan, J. He appeals, alleging ineffec-
    tive assistance of counsel and error in the credit given against
    his sentence. *Held:*

1. The standard to determine whether a defendant has had
effective assistance of counsel in a criminal trial is that defense
counsel must perform at least as well as a lawyer with ordi-
nary training and skill in the criminal law and must conscien-
tiously protect his client's interests, undeflected by conflicting
considerations, and not make a serious mistake but for which
defendant would have had a reasonably likely chance for
acquittal. In the case of allegations of specific mistakes by
counsel resulting in a denial of effective assistance, the test is
whether, in a trial free of the mistake, even one juror might
have voted for acquittal. Defendant was not denied effective
assistance of counsel.

2. The decision of trial counsel to question or not to question
certain witnesses is a matter of trial strategy and is not a basis
for a claim of ineffective assistance of counsel.

3. The statute requiring credit for time spent in jail before
sentencing is remedial and should be liberally construed to
effectuate the salutary purpose sought to be achieved by the
Legislature in its enactment, which is to put an indigent or less
financially able accused in the same position as an accused who
can afford to furnish bail. A defendant in custody on unrelated
matters is entitled to sentence credit for time served from the
date the authorities first knew of his whereabouts and could
have placed a hold on him whether they did so or not.

4. A defendant who was arrested and released on bond but

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 21 Am Jur 2d, Criminal Law §§ 315, 319, 321.
[2] 81 Am Jur 2d, Witnesses §§ 463, 464.
[3] 81 Am Jur 2d, Witnesses §§ 137, 518, 519.
[4, 5] 21 Am Jur 2d, Criminal Law §§ 543, 545.

who was subsequently jailed on another charge for which he could not post bond was entitled to credit, upon sentencing for the first offense charged, for time served even though the time served did not result directly from the charge for which he was convicted.

Affirmed in part, reversed in part and remanded.

1. Criminal Law — Effective Assistance of Counsel.

The standard to determine whether a defendant had effective assistance of counsel in a criminal trial is that defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interests, undeflected by conflicting considerations, and not make a serious mistake but for which defendant would have had a reasonably likely chance for acquittal.

2. Criminal Law — Effective Assistance of Counsel — Trial Strategy.

The decision of trial counsel to question or not to question certain witnesses is a matter of trial strategy and is not a basis for a claim of ineffective assistance of counsel.

3. Witnesses — Impeachment — Rules of Evidence.

A party is permitted to impeach a witness he has called where the witness's testimony is contrary to that which the party had anticipated and was *actually injurious* to his case (MRE 607[2][C]).

4. Criminal Law — Sentencing — Credit for Time Served — Statutes.

The statute requiring credit for time spent in jail before sentencing is remedial and should be liberally construed to effectuate the salutary purpose sought to be achieved by the Legislature in its enactment, which is to put an indigent or less financially able accused in the same position as an accused who can afford to furnish bail (MCL 769.11b; MSA 28.1083[b]).

5. Criminal Law — Sentencing — Credit for Time Served — Statutes.

A defendant who was arrested and released on bond but who was subsequently jailed on another charge for which he could not post bond was entitled to credit for time served, upon sentencing for the first offense charged, even though the time served did not result directly from the charge for which he was convicted (MCL 769.11b; MSA 28.1083[2]).

*Janet Tooley,* Assistant State Appellate Defender, for defendant on appeal.

Before: Bronson, P.J., and J. H. Gillis and Cynar, JJ.

Per Curiam. On February 16, 1979, defendant was convicted of breaking and entering, MCL 750.110; MSA 28.305, and sentenced to 5 to 15 years imprisonment. He appeals as of right.

Defendant asserts two claims of error. The first alleges ineffective assistance of trial counsel. The second alleges error in the credit given against his sentence.

The charges against defendant arose out of a breaking and entering at the home of Steven Taylor's parents. Steven was then 15 years old. He arrived home from school on April 7, 1978, to find a red van parked in the driveway. While he noted the type of van, and memorized the license number, two men walked around the side of the house from the backyard. One, carrying a shotgun, told Steven that they were "investigating". When Steven asked for identification, the men silently entered the van and drove off.

When Steven entered the house, be found that the family room door had been pulled off its hinges, a television had been moved, and a gun box had been placed on his parent's bed. Mr. Taylor's shotgun was missing from the box. Steven then called the state police and Troopers Monfette and Muladore soon arrived to take his report.

A week later, the troopers asked Steven to look through some photographs. After initially choosing defendant's photo together with two others, Steven three times picked out defendant's photograph as a picture of the man carrying the shotgun.

Approximately ten months after the offense, trial began and defendant was convicted.

I

In Michigan, the merit of claims of ineffective assistance of counsel is determined by applying a bifurcated test. *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976), *reh den* 399 Mich 1041 (1977). The first branch of the inquiry focuses on the Sixth Amendment right to counsel, for which the Supreme Court has endorsed the standard established in *Beasley v United States,* 491 F2d 687, 696 (CA 6, 1974). *People v Garcia, supra,* 264. To satisfy defendant's right to counsel, his lawyer "must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interests, undeflected by conflicting considerations". *Id.* Aside from reviewing the overall performance of counsel, an appellate court will also examine particular mistakes of counsel to safeguard defendant's right to a fair trial, which is the other branch of the inquiry. For this purpose, the *Garcia* Court adopted the standard developed in *People v Degraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969):

"However, even where assistance of counsel satisfies the constitutional requirements, defendant is still entitled to a fair trial. Defendant can be denied this right if his attorney makes a serious mistake. But a court should not grant a new trial unless it finds that but for this mistake defendant would have had a reasonably likely chance for acquittal." *Garcia, supra,* 266.

Initially, we note that defense counsel's overall performance was capable. He filed a motion to

suppress the photographic identification of defendant and adequately argued at the evidentiary hearing that the procedures used were suggestive. He argued at trial that the identification of defendant was the product of repeated exposure to defendant. He effectively persuaded the trial court to deny the prosecution's use of two prior felony convictions by arguing that their prejudicial impact outweighed the probative value of their introduction into evidence.

Defendant's ineffective assistance of counsel argument is also predicated on four specific mistakes allegedly made by trial counsel. Defendant first notes that counsel erred in asking defendant if he had had a shotgun in his possession within the last ten months. Defendant had been arrested for possession of a shotgun one day short of ten months from the date the question was asked. At trial, however, defendant initially answered the question in the negative. It was not until defense counsel indicated that he had completed his direct examination of defendant that defendant stated that he had been arrested on April 16, 1978. The court reporter transcribed the statement as involving shoplifting. After the jury began to deliberate, however, they asked to have defendant's unsolicited comment read back to them and the judge and the two attorneys thought that defendant had said he had been arrested with a shotgun, rather than for shoplifting. Ultimately, the jury was instructed to use their recollection of what was said in reaching a verdict.

Assuming *arguendo* that trial counsel knew of defendant's arrest, the question is whether, in a trial free of the error, even one juror might have voted to acquit him. Since the crucial issue at trial was defendant's identity as one of the men Steven

Taylor saw on April 7, 1978, we do not believe that defendant's statement (no matter which version) caused a guilty verdict when otherwise the jury would have voted to acquit. See, *e.g., People v Armstrong,* 100 Mich App 423; 298 NW2d 752 (1980).

Defendant next claims that trial counsel erred because he failed to impeach Steven Taylor's identification testimony with his preliminary examination testimony regarding the photographic lineup. We disagree. Although counsel did not use the preliminary examination testimony specifically, he did devote substantial time to the issue. He noted that the witness was unable to describe defendant for defense counsel, although he was able to give descriptive answers to the prosecutor's questions about defendant's appearance. He urged in closing argument that Steven's in-court identification of defendant was the result of repeated exposure to defendant in court. Further, the decision not to use the preliminary examination testimony was a reasonable trial tactic, *People v Robideau,* 94 Mich App 663, 669; 289 NW2d 846 (1980), since the prosecutor could have shown that Steven eventually picked defendant's picture three times.

Another assertion is that counsel's failure to object to a hearsay statement constituted a serious mistake requiring a new trial.

The van which Steven found parked in the driveway belonged to Edward Konarske, who testified at trial that he recalled talking to Trooper Monfette about the van but he could not "recall * * * for positive * * *" whether he told Monfette that defendant and a friend had borrowed the van on April 7, 1978. Thereafter, Trooper Muladore testified that he and Monfette went to Konarske's house one day after the break-in and were told by

Konarske that defendant and an unknown man had borrowed the van on April 7. Defense counsel did not object to this testimony or to Muladore's later statement that defendant admitted he had borrowed the van. Trooper Monfette subsequently testified that Konarske stated he had been serving a three-day sentence in DeHoCo on April 7, 1978, which statement was subsequently verified, and that defendant admitted having borrowed the van while Konarske was in DeHoCo, but he remembered nothing about the day of the crime. Again, there was no objection from defense counsel.

The statement to which defendant objects is that made by Trooper Muladore to the effect that Konarske said defendant had the van on April 7, 1978. Defendant states that this was inadmissible hearsay. It was not. Rather than being introduced to prove the truth of the matter asserted therein, MRE 801(c), it was introduced to impeach Konarske's credibility. See, *People v Hallaway,* 389 Mich 265, 276; 205 NW2d 451 (1973).

The question now is whether the attempted impeachment was proper. Konarske was called by the prosecution, so our initial inquiry is whether he could properly have been impeached by the party who called him. MRE 607 permits a calling party to impeach a witness if "the calling party is the prosecutor and he is obliged to call the witness", MRE 607(2)(A), or if "the witness's testimony was contrary to that which the calling party had anticipated and was actually injurious to the calling party's case". MRE 607(2)(C).

Konarske was not a res gestae witness; he was not an eyewitness to the crime nor did he have any "independent personal knowledge of any part of the criminal transaction". *People v Carter,* 87 Mich App 778, 784; 276 NW2d 493 (1979). Thus, MRE 607(2)(A) is inapplicable here.

Under MRE 607(2)(C), Konarske's testimony was contrary to that which the prosecutor could reasonably have anticipated. Konarske did not testify at the preliminary examination, so the first time the prosecutor could have known that Konarske would not recall telling the state police that he loaned the van to defendant was at trial. However, Konarske's testimony was not *actually* injurious to the prosecutor's case. At first blush, it would appear that Konarske's testimony was injurious because he did not testify as the prosecutor expected. However, the focus of the rule is whether what was said, not what was not said, injured the calling party's case. If we were confronted with a witness who affirmatively stated that defendant did not have the van on April 7, such testimony might be actually injurious to the calling party's case because it would aid his opponent. Where the witness's testimony is neutral, however, although it disappoints the calling party's expectations, it does not aid his opponent and thus it is not *actually* injurious. See, *e.g., Taylor v Baltimore & Ohio R Co,* 344 F2d 281, 284 (CA 2, 1965), *Goings v United States,* 377 F2d 753, 759 (CA 8, 1967).

Because Konarske's testimony was not actually injurious to the prosecutor's case, MRE 607(2)(C) does not apply, and the prosecutor should not have been permitted to impeach Konarske. However, defense counsel's failure to object to the prosecutor's attempt to impeach Konarske does not require a finding of ineffective assistance of trial counsel. The case against defendant was so strong that we do not believe that, in a trial free of the error, one juror would have voted to acquit. In support of this conclusion, we rely on Steven Taylor's identification of defendant at the photographic showup and at trial and the connection between the van, its owner, and defendant.

Finally, defendant claims error in trial counsel's failure to introduce available evidence that Trooper Muladore did not participate in defendant's arrest, contrary to Muladore's trial testimony. The available evidence was Muladore's log sheet.

A review of the transcript reveals that defense counsel likely did not know that defendant would claim Muladore was not present during the arrest until Muladore testified at trial that he was present. The only way to have avoided such a problem would have been to check the log sheets of all officers involved in the case in order to discover a discrepancy. Such a procedure can hardly be expected as a matter of course. Because defense counsel did attempt to impeach Muladore's credibility on this point through defendant's testimony, we find no error reflective of ineffective assistance of counsel. Further, because the issue was collateral to defendant's guilt or innocence, we doubt that, in a trial free of the problem, defendant would have been acquitted.

## II

Defendant also challenges the amount of credit he was given when he was sentenced. At sentencing, defendant was accorded 120 days credit for time served. On appeal, he claims that he was entitled to more than 120 days credit, pursuant to MCL 769.11b; MSA 28.1083(2).

Our review of the transcript and the record discloses the following. The breaking and entering was committed on April 7, 1978. The warrant was issued on June 5, 1978. On July 11, 1978, the Michigan State Police placed a "hold" on defendant with the Detroit Police Department at DeHoCo. A few days later, when the authorities

called DeHoCo to arrange to arraign defendant on the breaking and entering, however, they were advised that defendant was no longer is custody. Ultimately, defendant was arrested on October 27, 1978, arraigned on October 28, 1978, and the preliminary examination was held on November 6, 1978. On that date, bond was set at $3,000. Trial was initially scheduled for December 19, 1978, but it was later adjourned to February 13, 1979, due to defense counsel's hospitalization. On February 16, 1979, defendant was convicted as charged. On March 13, 1979, he was sentenced to 5 to 15 years imprisonment with 120 days credit.

Further representations were made by defense counsel, the prosecutor, and Trooper Monfette at a motion to dismiss under the 180-day rule. The essence of these unverified statements was that defendant was in custody in various places of confinement for some or all of the period between June 5, 1978, and trial. Thus, defendant argues on appeal that he should be credited with the period from June 5, 1978, to March 13, 1979.

MCL 769.11b; MSA 28.1083(2), states as follows:

"Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing."

This is a remedial statute which should be liberally construed to effectuate the salutary purpose of the legislation. *People v Face,* 88 Mich App 435, 438; 276 NW2d 916 (1979), *People v Groeneveld,* 54 Mich App 424, 427; 221 NW2d 254 (1974), *lv den* 393 Mich 814 (1975). The purpose of the statute is

to put an indigent or less financially able accused in the same position as an accused who can afford to furnish bail. *People v Pruitt,* 23 Mich App 510, 513; 179 NW2d 22 (1970), *People v Face, supra,* 439. Moreover, in *People v Chattaway,* 18 Mich App 538, 542; 171 NW2d 801 (1969), this Court also noted that the statute "avoids unnecessary chilling of exercise of the right to trial" by crediting time spent awaiting trial which would have been avoided if the person had pled guilty. Finally, the statute entitles a convicted person to sentence credit without regard to the reason why he was denied or unable to furnish bond. *Chattaway, supra,* 542-543. That the defendant will, in the end, receive credit twice for the single time period, does not alter the rule. *Chattaway, supra,* 543.

Under *Chattaway,* if defendant had been arrested on the date the warrant was issued on the burglary charge, he would have received credit from June 5. However, defendant was not arrested until October 27, 1978, when he was acquitted on other charges. By waiting to arrest defendant until after he was acquitted of the other charges, the authorities were able to circumvent the *Chattaway* ruling—though unintentionally.

A similar situation was presented to the Court in *People v Face, supra,* where the defendant had been arrested and placed in jail pending trial on a Lenawee County charge. Four days later, on October 19, 1976, a hold was placed on her due to a Hillsdale County warrant. On December 1, 1976, she was placed on probation in Lenawee County with the first six months to be served in the county jail. Credit was given for the time spent in the jail awaiting sentence. Upon her release on March 10, 1977, defendant was formally arrested on the Hillsdale County charge and placed in jail.

Although she later posted bond and then was sentenced to probation, a probation violation led to a 3- to 14-year sentence with no credit for time previously served. On appeal, the defendant claimed she was entitled to credit for the period from October 19, 1976, to March 10, 1977, on her sentence for the Hillsdale County charge. This Court agreed, stating:

"Defendant could have been sent to Hillsdale County for arraignment at the time the 'hold' was placed on her. If that had occurred, defendant would have been denied bail in the Hillsdale County case and *Chattaway, supra,* and *Donkers, supra,* would be applicable, entitling her to credit for the time subsequently served in Lenawee County. Instead, however, the authorities delayed arresting defendant, thereby circumventing *Donkers, supra,* and *Chattaway, supra.* Because of this delay, defendant lost the benefit of concurrent sentencing, which is required absent explicit statutory authority to the contrary, *People v Lawson,* 75 Mich App 726, 730; 255 NW2d 748 (1977)." 88 Mich App 435, 441.

Under *Face,* defendant is entitled to credit at least from the time the hold was placed on him on July 11, 1978. However, defendant claims he should receive credit from the date the arrest warrant was issued (June 5, 1978), rather than from the date the hold was placed on him pursuant to the warrant. The holding in *Face* supports defendant's contention. A defendant should not suffer additional days in prison as a result of administrative delay in arresting him. *Face* allowed credit from the time a hold was placed on the defendant, but the facts did not indicate whether the arrest warrant was issued that day or earlier. In the instant case, a hold could have been placed on defendant on the day the warrant was

issued, if the authorities had known where defendant was being held at that time.

The transcript of the hearing on the motion to dismiss reveals conflicting points of view on the question whether the authorities knew where defendant was on June 5, 1978. Trooper Monfette, who ultimately phoned in the "hold", stated first that he called it in as soon as he discovered that defendant was "with" the armed robbery division of the Detroit Police Department. He then contradicted himself by stating that he knew defendant was in custody in April, 1978, but the breaking and entering warrant had not yet issued. When the warrant was issued on June 5, 1978, he was advised by DeHoCo that defendant had been turned over to the Detroit Police Department armed robbery division. Because he worked midnight shifts during the period from June 5, 1978, to July 11, 1978, Trooper Monfette was unable to contact the Detroit Police Department armed robbery division until July 11, 1978.

Because we cannot determine from the record whether the authorities knew where defendant was being held on June 5, 1978, and because the record we do have was not made under oath or with the benefit of cross-examination, we cannot decide the question defendant presents. In this situation, a remand to the trial court for a determination of the number of days served is the appropriate remedy. *People v Parisi,* 46 Mich App 322; 208 NW2d 70 (1973), *rev'd on other grounds,* 393 Mich 31; 222 NW2d 757 (1974). Upon remand, the trial court shall also determine whether the "hold" could have been placed on June 5, 1978. The court shall then credit defendant with the number of days served, commencing with the date on which the hold could first have been placed.

Between the time defendant was arrested on the breaking and entering charge and the date of trial, defendant was apparently released on bond. From the record, bond was posted sometime between October 28, 1978, and November 7, 1978. The trial court is also directed to determine when defendant was released on bond and then use that date as the end point of the credit he is to receive pursuant to the foregoing discussion.

Subsequent to his release on bond, defendant was arrested on an unrelated charge on November 23, 1978. He remained in custody until he was sentenced on the breaking and entering charge on March 13, 1979. Defendant's final claim on appeal is that he should also be credited with the time served during this period.

There are three points of view on this question. The most strict approach states that if defendant is technically free on bond on the charge of which he was convicted (charge A), time served due to any other charge will not be credited when he is sentenced upon conviction of charge A. See, *e.g.*, *People v Finn,* 74 Mich App 580; 254 NW2d 585 (1977). Similarly, where defendant was not confined on the charge of which he was convicted, no credit was given. *People v Risher,* 78 Mich App 431; 260 NW2d 121 (1977).

The middle view is that if defendant is confined on a related charge, credit will be given. *People v Tilliard,* 98 Mich App 17; 296 NW2d 180 (1980). As between the two charges, there must be an "intimate and substantial relationship", *People v Groeneveld, supra,* 427-428, or a rational nexus, *People v Face, supra,* 439.

The most liberal view is that credit will be granted, although the letter of the sentence credit statute precludes it, because the spirit of the stat-

ute requires it. *People v Potts,* 46 Mich App 538, 550-551; 208 NW2d 583 (1973), *lv den* 391 Mich 833 (1974), *People v Parisi, supra,* 329-330, *People v Chattaway, supra,* 541-543.

In the instant case, defendant was confined on a different and apparently unrelated charge between the time he was released on bond and the conviction. We herewith adopt the view expressed in *Potts, supra,* and conclude that defendant should be credited with the time he was confined during this period.[1] As noted in *Chattaway, supra,* 541-542, the sentence credit statute is intended to free a defendant who exercises his right to trial from serving more time than a defendant who pleads guilty immediately after his arraignment. Only by granting credit as defendant requests can we achieve this purpose.

Affirmed in part, reversed in part and remanded for proceedings consistent with this opinion. We retain no further jurisdiction.

---

[1] To the extent that *People v Potts,* 46 Mich App 538; 208 NW2d 583 (1973), *lv den* 391 Mich 833 (1974), conflicts with *People v Groeneveld,* 54 Mich App 424; 221 NW2d 254 (1974), *lv den* 393 Mich 814 (1975), Judge J. H. GILLIS confesses error in *Groeneveld.*