PEOPLE v ADKINS

Docket Nos. 82294, 82333. Argued June 6, 1989 (Calendar No. 2). Decided December 19, 1989.

Kenneth Adkins was convicted by a jury in the Detroit Recorder's Court, Geraldine B. Ford, J., of armed robbery and possession of a firearm during the commission of a felony. The court granted sentence credit for time actually spent in Michigan jails but not for time spent incarcerated in Ohio and federal jails prior to his convictions as a result of unrelated offenses. The Court of Appeals, Maher, P.J., and R. C. Livo, J. (McDonald, J., concurring in part and dissenting in part), reversed in an unpublished opinion per curiam, concluding that the trial court had miscalculated the amount of credit to which the defendant was entitled under MCL 769.11b; MSA 28.1083(2), and holding that even though the defendant had been incarcerated outside of Michigan for unrelated offenses, he was entitled to credit from the time at which Michigan authorities placed, or could have placed, a detainer or hold on him pursuant to the Interstate Agreement on Detainers while he was incarcerated in those facilities (Docket No. 88132). The people appeal.

In an opinion by Justice Boyle, joined by Chief Justice Riley and Justices Brickley and Griffin, the Supreme Court *held:*

Section 11b of the sentence credit statute does not require that a defendant receive credit for time spent incarcerated in other jurisdictions, for offenses committed while free on bond for the offense for which credit is sought, from the time that a detainer or hold either was or could have been entered against the defendant by authorities in the jurisdiction where the defendant is to be sentenced. Such credit is to be granted for time spent incarcerated prior to sentencing only where it is as a result of the defendant being denied or being unable to furnish bond for the conviction for which sentence is imposed.

1. The sentence credit statute provides that whenever a

REFERENCES

Am Jur 2d, Criminal Law §§ 547-550.

Right to credit on state sentence for time served under sentence of court of separate jurisdiction where state court fails to specify in that regard. 90 ALR3d 408.

person is convicted of a crime and has been incarcerated prior to sentencing because of being denied or unable to furnish bond for the offense which results in conviction, sentence credit is to be granted for time served only with regard to that offense, and not with regard to other unrelated convictions. The fact that a hold or detainer—an indication to the authorities in a jurisdiction which has custody of a defendant that there are charges pending in another jurisdiction and that the authorities from that jurisdiction would like to be notified before release—is placed on a prisoner is irrelevant for purposes of the sentence credit statute. It does not convert the time served in the first jurisdiction into time served for the offense of which the defendant is later convicted in the requesting jurisdiction. The fact that such a hold or detainer has been entered does not mean that the authorities in the requesting jurisdiction gain something akin to constructive custody of the defendant, nor does it mean that the defendant is no longer incarcerated solely because of the unrelated offense in the other jurisdiction. Rather, it means that the authorities in the jurisdiction which has custody of the defendant have agreed not to effect release without notice to the holding jurisdiction.

2. In this case, the time the defendant served in Ohio and federal prisons prior to his release into the custody of Michigan authorities was not as a result of his being denied or unable to post bond for the offenses of which he was later convicted in Michigan, but was for the offenses of which he had been convicted in those jurisdictions. Whether Michigan authorities did or could have entered a detainer or hold against him while he was incarcerated in those jurisdictions is irrelevant for purposes of determining the amount of sentence credit to which he is entitled under § 11b. While the Court of Appeals erred in ordering defendant's sentence credit recalculated to include credit for time served after a detainer or hold was or could have been entered against him, the prosecutor did not appeal that part of the Court of Appeals decision granting the defendant credit for time served after the request to transfer was actually entered, requiring recalculation of the defendant's sentence credit to include time served after the hold was entered.

Justice LEVIN, joined by Justices CAVANAGH and ARCHER, concurring, stated that while sentence credit for the time the defendant was incarcerated in other jurisdictions for offenses committed while he was free on bond for the offense for which he now seeks credit is not required and that that conclusion is supported by *People v Prieskorn,* 424 Mich 327 (1985), the

dictum of *Prieskorn* which the Court repeats remains dictum when repeated in a subsequent case where it is not necessary to decision.

Affirmed in part and reversed in part.

CRIMINAL LAW — SENTENCE CREDIT — INTERSTATE DETAINERS — UNRELATED OFFENSES.

Section 11b of the sentence credit statute does not require that a defendant receive credit for time spent incarcerated in other jurisdictions, for offenses committed while free on bond for the offense for which credit is sought, from the time that a detainer or hold either was or could have been entered against the defendant by authorities in the jurisdiction where the defendant is to be sentenced; such credit is to be granted for time spent incarcerated prior to sentencing only where it is as a result of the defendant being denied or being unable to furnish bond for the conviction for which sentence is imposed (MCL 761.11b; MSA 28.1083[2]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Research, Training and Appeals, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people.

*Arthur Lee Morman* for the defendant.

BOYLE, J. The question before the Court is whether Michigan's sentence credit statute, MCL 769.11b; MSA 28.1083(2), requires that a defendant receive credit for time spent incarcerated in other jurisdictions, for offenses committed while he was free on bond for the offense for which he seeks such credit, from the time that a detainer or hold either was or could have been entered against him by authorities in the jurisdiction where the defendant is to be sentenced. We hold that the statute does not require sentence credit under such circumstances.

I

Defendant Adkins was arrested on February 10, 1983, and charged with armed robbery, MCL 750.529; MSA 28.797, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). He posted bond on February 14, 1983, and was released from custody pending trial, which was scheduled for September 6, 1983. When the defendant failed to appear for trial, his bond was revoked and a *capias ad respondendum* issued.

Soon thereafter, in October, 1983, the defendant was arrested in Ohio for an unrelated offense and charged with receiving stolen property. He was incarcerated in an Ohio county jail for that offense from October 28, 1983, until July 26, 1984, when he was released into federal custody to begin serving a sentence for the separate conviction in federal court, during his custody in Ohio, of interstate transportation of stolen property. The defendant was initially placed in the federal penitentiary in Milan, Michigan, but was later transferred, in October, 1984, to the federal facility in Terra Haute, Indiana.

He was returned to Michigan on November 26, 1984, to stand trial on the armed robbery and felony-firearm charges. He was convicted of both offenses on July 11, 1985, and sentenced on July 26, 1985, to thirteen to twenty-five years for the armed robbery conviction, plus the mandatory two-year term for the felony-firearm offense.

The question in this case concerns the extent to which the defendant is entitled under our sentence credit statute, MCL 769.11b; MSA 28.1083(2), to sentence credit for his Michigan convictions for time spent incarcerated in the Ohio and federal jails as a result of the unrelated stolen property offenses. The trial judge gave the defendant credit

only for the time actually spent in Michigan jails, that is, for the three days between his arrest and release on bond and for the time between November 26, 1984, when the defendant was returned to this state by the federal authorities, and July 26, 1985, when he was sentenced.

On appeal, the Court of Appeals concluded that the trial court had miscalculated the amount of credit to which the defendant was entitled under § 11b. The Court held that even though the defendant had been incarcerated outside of Michigan for unrelated offenses, he was entitled to credit from the time at which Michigan authorities placed, or could have placed, pursuant to the Interstate Agreement on Detainers (IAD), MCL 780.601 *et seq.*; MSA 4.147(1) *et seq.*, a detainer, or "hold," on him while he was incarcerated in those facilities.[1]

We granted leave[2] to determine whether the fact that the prosecution could have placed a detainer or hold on the defendant, or brought him back to stand trial in this state earlier than it in fact did, entitles him to sentence credit under § 11b from the time such action could have been taken.

II

Michigan's sentence credit statute, MCL 769.11b; MSA 28.1083(2), provides:

Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the

---

[1] *People v Adkins,* unpublished opinion per curiam, decided December 2, 1987 (Docket No. 88132).

[2] 431 Mich 870 (1988).

sentence for such time served in jail prior to sentencing.

Recently, in *People v Prieskorn,* 424 Mich 327; 381 NW2d 646 (1985), this Court undertook to provide a rather lengthy explanation of the history, purpose, and application of this statute in the context of a defendant's incarceration for multiple unrelated offenses. We decided, on the basis of clear language of the statute, that "[t]he Legislature sought, in enacting the statute, to give a criminal defendant a right to credit for any presentence time served 'for the offense of which he is convicted,' and not upon any other conviction." *Id.,* p 341. We remain convinced of the correctness of that conclusion.

A

In *Prieskorn,* the defendant was free on bond awaiting trial on two drug-related charges when he was arrested and subsequently convicted for driving with a revoked license. He was sentenced to ninety days in jail for this traffic violation. After serving fifty-one days of that sentence, the defendant was charged with a third drug offense. Eighteen days later he pled guilty to the first drug charge in exchange for dismissal of the other two. The defendant then sought credit for the sixty-nine days he had spent incarcerated prior to his plea. The Court of Appeals granted the defendant credit only for the eighteen days after his "arrest" while in jail on the third charge.

In affirming the Court of Appeals decision, we noted initially the conflicting lower court interpretations of § 11b, many of which appeared to turn on various policy considerations, or some notion of judicial fairness. We cautioned that such policy

decisions were generally the province of the Legislature, which had made its decision regarding sentence credit by adopting § 11b, and that our function was merely to apply the language of that statute in order to effectuate the Legislature's intentions. *Prieskorn,* p 339.

Ultimately, we concluded that the language of the sentence credit statute

> neither requires nor permits sentence credit in cases, such as the one before us, where a defendant is released on bond following entry of charges arising from one offense and, pending disposition of those charges, is subsequently incarcerated as a result of charges arising out of an unrelated offense or circumstance and then seeks credit in the former case for that latter period of confinement. [*Id.,* p 340.]

We based this conclusion on the language in § 11b referring to time served prior to sentencing "because of being denied or unable to furnish bond for the offense of which he is convicted . . . ." We reasoned:

> Had the Legislature intended that convicted defendants be given sentence credit for all time served prior to sentencing day, regardless of the purpose for which the presentence confinement was served, it would not have conditioned and limited entitlement to credit to time served "for the offense of which [the defendant] is convicted." [*Prieskorn,* p 341.][3]

Relying on this interpretation of § 11b, we affirmed the decision of the Court of Appeals not to

---

[3] We found in *Prieskorn* that the primary purpose of the sentence credit statute was to " 'equalize as far as possible the status of the indigent and less financially well-circumstanced accused with the status of the accused who can afford to furnish bail.' " *Id.,* p 340 (citing *People v Pruitt,* 23 Mich App 510, 513; 179 NW2d 22 [1970]).

grant the defendant credit for the fifty-one days
served prior to his being charged with the third
drug offense. We concluded that the defendant
"did not serve that time because of his inability to
post bond for the [drug offense] of which he now
stands convicted." *Id.,* p 343.[4]

In our view, *Prieskorn* is clearly implicated in
this case. The defendant here was charged initially
with armed robbery and then released on bond
pending trial. Prior to his trial and conviction of
this charge, the defendant was arrested and con-
victed, and began serving sentences in two other
jurisdictions, for two *unrelated* stolen property
offenses. The defendant now seeks credit for part
of that time served, even though it was clearly
served under the unrelated stolen property convic-
tion sentences and not because of his inability to
post bond for the armed robbery charge of which
he was eventually convicted.

Under these facts, it would seem to be a rela-
tively straightforward application of *Prieskorn* to
say that the defendant here is entitled to no credit
for the time served in the Ohio and federal facili-
ties for these unrelated offenses. The Court of
Appeals, however, declined to follow *Prieskorn* in
this case. Relying on its recent decision in *People v
Ranson,* 153 Mich App 157; 395 NW2d 271 (1986),
the Court concluded that *Prieskorn* does not apply
where a "hold" was placed on the defendant by
authorities in the jurisdiction where he is being
sentenced while he was imprisoned elsewhere for
an unrelated offense. *People v Adkins,* unpublished
opinion per curiam, decided December 2, 1987
(Docket No. 88132), slip op, p 8. It reasoned that

---

[4] We left open, however, the question whether the defendant was
even entitled to credit for the eighteen days served between that
charge and this plea, since the prosecutor had not appealed that
decision. *Prieskorn, supra,* p 344.

once such a hold is placed, the defendant can no longer be said to be incarcerated solely because of the unrelated offense.

In this case, the Court of Appeals found that a hold, or detainer, was entered against the defendant under the IAD when the prosecution was informed by federal officials that its request for temporary custody was granted, on October 24, 1984.[5] Thus, it concluded, sentencing credit under

---

[5] The IAD is a congressionally sanctioned interstate compact, the purpose of which is "to encourage the expeditious and orderly disposition of . . . charges [outstanding against a prisoner] and [the] determination of the proper status of any and all detainers based on untried indictments, informations or complaints." (Article I.) It establishes procedures by which either a prisoner may demand the speedy disposition of charges pending against him in another member state (art III), or a member state may obtain custody for trial of a prisoner incarcerated in another state (art IV).

The provisions of the IAD are triggered only upon the filing of a "detainer" by the "requesting" state with authorities from the "sending" state, indicating that there are untried charges pending against the defendant in the requesting state. The United States Court of Appeals for the Sixth Circuit, in *United States v Dixon,* 592 F2d 329, 332, n 3 (CA 6, 1979), described a detainer as

> simply a notice filed with the institution in which a prisoner is serving a sentence, advising that the prisoner is wanted to face pending criminal charges elsewhere, and requesting the custodian to notify the filing jurisdiction prior to releasing the prisoner. Filing a detainer is an informal process that generally can be done by any person who has authority to take a prisoner into custody. Furthermore, a detainer remains lodged against a prisoner without any action being taken on it. *Ridgeway v United States,* 558 F2d 357 (CA 6, 1977), cert den 436 US 946; 98 S Ct 2850; 56 L Ed 2d 788 (1978). See also *United States v Mauro,* 436 US 340; 98 S Ct 1834; 56 L Ed 2d 329 (1978).

Before the requesting state can obtain custody of the defendant for purposes of a trial, however, it must also file a formal "request" for such custody with the sending state. (Article IV, § [a].)

In this case, we do not know if or when a detainer, as that term is defined above, was ever lodged against defendant Adkins. He claims that he was notified that a "hold" or detainer had entered against him on or about November 4, 1983, early during his term of incarceration in the Ohio county jail. Although there is nothing in the record to support this contention, we do not dispute its likelihood.

We do know, however, that the more formal "request for temporary custody" was filed some eleven months later, on October 4, 1984, after

§ 11b should have run at least from that date, some thirty days prior to defendant's actual transfer into the custody of the Michigan authorities, on November 24, 1984.

The Court of Appeals in this case took the reasoning in *People v Ranson, supra,* one step further, however, concluding that the defendant should be given credit not only from the time at which the hold was actually placed, but from the time it *could have* been placed. Presumably, this time would roughly coincide with when the prosecution learned of the defendant's incarceration in Ohio and could have requested his return to Michigan.

The Court of Appeals cited a number of lower court decisions in support of this contention. See *People v Turner,* 130 Mich App 646; 344 NW2d 34 (1983); *People v Coyle,* 104 Mich App 636, 647-648; 305 NW2d 275 (1981), lv den 415 Mich 851 (1982); *People v Ranson, supra,* (MAHER, J., dissenting). See also *People v Major,* 106 Mich App 226; 307 NW2d 451 (1981) (CYNAR, J., dissenting). It acknowledged, however, a split within its ranks on this issue, and cited a number of decisions which conclude that a defendant is entitled to credit only for time served after a hold is actually placed. See *People v Ranson, supra; People v Shipp,* 141 Mich App 610; 367 NW2d 430 (1985), lv den 422 Mich 934 (1985); *People v Major, supra.*

Explaining its decision to adopt the former view as "the more sound," the Court of Appeals stated:

If credit is to be given only from the time the hold is actually placed on a defendant, this would at the very least encourage prosecutors to delay

---

the defendant's transfer to federal prison. This request was granted on October 24, 1984, and, pursuant to art IV, § (a), the defendant was transferred into the custody of the authorities from this state thirty days later, on November 24, 1984. It is this request to which the parties and the Court of Appeals refer when they acknowledge that a hold or detainer was entered against the defendant in this case.

the hold until the latest date possible. In making that statement we do not mean to infer bad faith on the part of prosecutors, for we recognize that many prosecutors feel an obligation to the public to keep convicted felons, especially those whose crimes were serious, behind bars as long as possible. Were we to concede to that view, it would be an admission that our prison systems exist solely to punish. This we are unwilling to do. However rose-colored our views, we believe that incarceration is also meant to rehabilitate criminal offenders so that they can function within and contribute to society. To condone a system which maximizes a defendant's incarceration, without thought as to rehabilitation and integration, serves only to excuse our prisons' responsibility in that regard. [*People v Adkins, supra,* slip op, p 9.]

The Court thus apparently assumed that credit was required to be given either from the time the hold was actually placed or from the time when it could have been placed.

On appeal in this Court, the prosecution contends that the Court of Appeals should have applied the "actual hold" rule described in *People v Ranson, supra,* while the defendant argues that the Court properly granted credit from the time the hold "could have" been placed. Both parties seem to agree with the Court of Appeals, therefore, that our conclusion in *Prieskorn* is to some extent "inapplicable" in this situation. We disagree, and now hold that § 11b does not require a court to grant sentence credit from the time a hold either was or could have been placed. As explained in *Prieskorn,* credit is to be granted for presentence time served in jail only where such time is served as a result of the defendant being denied or unable to furnish bond "for the offense of which he is convicted."

B

It is important to note that each of the cases cited by the Court of Appeals, with the exception of *People v Ranson, supra,* was decided before our decision in *Prieskorn.* The early decision adopting the "could have" rule, upon which each of the later cases relies, is *People v Coyle, supra.* In *Coyle,* the defendant was in custody at the Detroit House of Corrections when a warrant was issued for his arrest on a charge of breaking and entering. There was no attempt to place a hold on the defendant until more than a month after the warrant was issued, by which time defendant had been transferred from that facility. He was eventually "arrested" several months later while in the custody of the Detroit Police Department's armed robbery division. The defendant was then released on bond pending trial on the breaking and entering charge.

While free on bond, the defendant was arrested on another unrelated charge. He was held in jail without bond on that offense until he was sentenced for the breaking and entering offense. The Court of Appeals credited Coyle, under § 11b, with both the time spent at the Detroit House of Corrections and in the custody of the Detroit police armed robbery division after the first warrant issued and the authorities "could have" put a hold on him, and the time spent in jail after his arrest on the subsequent unrelated offense.

In so doing, the *Coyle* Court relied substantially on an earlier interpretation of § 11b by the Court of Appeals in *People v Chattaway,* 18 Mich App 538; 171 NW2d 801 (1969). *Chattaway* involved a defendant who was arrested for two distinct and unrelated crimes. He was unable to post bond for the first, and thus no bond was set for the second.

The Court of Appeals in that case held that not only was the defendant entitled to sentence credit for the time spent in jail prior to his eventual plea with respect to the first offense, which the trial court had granted him, but that he also was entitled to credit for the same time (i.e., that served prior to his first plea) when he was sentenced for his eventual plea to the second, unrelated offense.

The *Chattaway* Court reasoned that if the credit statute were not so construed, the result "would chill exercise of the right to trial by an accused person who, like the defendant, faces more than one untried charge," since he may be "forced" into pleading guilty to one or another of the charges in order to get the sentencing clock running and benefit from our concurrent sentencing rule.[6] *Id.,* p 542. The Court rejected the prosecution's argument that the defendant should not be entitled to the same credit on sentencing for the second crime since he was not " 'denied or unable to furnish bond' " for that offense, concluding that the statute "entitles a convicted person to sentence credit without regard to the reason why he was denied or unable to furnish bond." *Id.,* pp 542-543.

As we noted in *Prieskorn,* there seemed to develop from the reasoning in *Chattaway* a line of

---

[6] *In re Carey,* 372 Mich 378; 126 NW2d 727 (1964). The Court in *Chattaway* reasoned that, in the absence of sentencing credit, a defendant who was convicted following a trial and sentenced to exactly the same term as one who pled guilty would be made to serve a longer time in prison, i.e., the time awaiting trial. By analogy, the Court then reasoned that if the defendant in *Chattaway* had pled guilty to one of the charges promptly after arraignment on the complaint, he would, as a result of the concurrent sentence rule, have obtained in effect sentence credit for the time he had spent in jail prior to his plea at the arraignment on the information in the other. The *Chattaway* Court believed that the best way to avoid a defendant's having to relinquish his right to trial would be to give him credit for both offenses, even though they are unrelated. *Chattaway, supra,* pp 541-542.

cases which essentially held that a defendant who is for any reason unable to gain his freedom by posting bond, including reasons unrelated to his financial status and the case in which he is seeking credit, is nevertheless entitled to credit in that case and, in a *Chattaway* situation, in all other pending cases as well. *Prieskorn,* p 337. *Coyle* is one such case.

Not only did the Court in *Coyle* grant the defendant credit for the breaking and entering sentence for time served for a second and unrelated offense after his release on bond, it granted him credit for the breaking and entering sentence from the time the authorities "could have" put a hold on him. It thought that by waiting to arrest him until he was acquitted of the initial charge for which he was in the custody of the Detroit police, the prosecution was able to "circumvent" *Chattaway* and frustrate the purpose of the concurrent sentencing rule. It further reasoned that a defendant should not suffer additional days in prison as a result of administrative delays—intentional or otherwise—in arresting him. *Coyle, supra,* pp 646-647.

We granted leave in *Prieskorn,* however, specifically to address the propriety of such reasoning.[7] What resulted from our opinion in that case, if nothing else, was a clear repudiation of *Chattaway's* teachings. In particular, this Court rather soundly rejected the *Chattaway* Court's position that the credit statute avoids "unnecessary chilling of exercise of the right to trial" by crediting time spent awaiting trial which would have been avoided if the person had pled guilty, *Chattaway, supra,* p 542, as an unwarranted extension of the plain language of § 11b:

---

[7] In fact, we granted leave to appeal in *Prieskorn* upon the lower court's certification that its decision was in conflict with *People v Coyle, supra. Prieskorn,* pp 332-333.

It may be that for defendants who find themselves incarcerated for multiple unrelated offenses, one of the motivations to plead guilty to some of the charges is the desire to accelerate the imposition of sentence in order to benefit, as much as possible, from Michigan's concurrent sentencing law. But that ingredient of a given defendant's motivation derives from the peculiar facts with which the defendant facing multiple charges is confronted and not, we think, from limiting application of the sentence credit statute to those circumstances described by its terms. We think it is clear that the Legislature sought, by the statute, to give a criminal defendant a right to credit for any presentence time served upon "the offense of which he is convicted." Judicial obedience to the language of the legislation may, incidentally, indeed coincidentally, have the effect of motivating a defendant, who is charged with multiple offenses and who has posted bond for one offense and was released, but who is incarcerated for a second offense, to waive his right to trial and proceed to plead guilty in the first case in order to get the sentencing clock running on that conviction while awaiting final disposition of the offense for which he is denied bond, or final resolution of an unrelated "hold" or "detainer." However, that motivation does not change the language of the statute and should not be judicial excuse for applying the statute to situations to which it does not extend. [*Prieskorn, supra,* pp 341-342. Emphasis added.]

We concluded in *Prieskorn,* again, that under both the literal language and legislative intendment of § 11b, a defendant is entitled to sentence credit only for time served as a result of being denied or unable to furnish bond "for the offense of which he is convicted." We reaffirm our conclusion today.[8]

___

[8] Our disapproval in *Prieskorn, supra,* p 338, of the *Chattaway* Court's extension of § 11b to situations in which it is not literally applicable is evident:

As for *Prieskorn's* application in this case, it is not difficult to see how our holding in *Prieskorn* precludes our adoption of the rule espoused by the Court of Appeals, granting credit for time served after a hold was or could have been placed. To begin, that Court's holding rests squarely on the result in *Coyle* and its progeny, and thus to a large extent on the reasoning of *Chattaway.* As explained earlier, our decision in *Prieskorn* clearly limits the importance of both cases—*Chattaway,* because we clearly rejected its later-described "liberal" interpretation of § 11b, and *Coyle,* because, while explicitly recognizing the conflict between it and the lower court's decision in *Prieskorn,* we affirmed the latter court's decision.

Ultimately, however, our rejection of both this panel's "could have" rule, and the alternative "actual hold" rule discussed by other panels of the Court of Appeals results from our inability to equate time served elsewhere prior to sentencing, even after a hold has been entered, with time served for the offense of which a defendant is later convicted. In our view, the mere placement of a hold or detainer on a prisoner—an indication to the authorities in the jurisdiction which has custody of the defendant that there are charges pending against him in another jurisdiction, and that the authorities from that jurisdiction would like to

---

In many of the cases in which credit has been granted without regard to whether the credited time was served for reasons having anything to do with the "offense of which [the defendant] is convicted," the Court of Appeals has afforded relief not because the language of the sentence credit statute commands it, but, following *Chattaway,* to avoid "unnecessary chilling of exercise of the right to trial," or to avoid losing "the benefit of [Michigan's] concurrent sentencing [law]." *People v Face,* 88 Mich App 435, 441; 276 NW2d 916 (1979).

*Prieskorn* makes clear our conclusion that application of the sentencing credit statute *is* to be limited to situations in which the language of the statute "commands" such credit.

be notified before he is released—does not "convert" the time the defendant is serving in the first jurisdiction into time served "for the offense" of which he is later convicted in the requesting jurisdiction.

The fact that such a hold or detainer has been entered does not mean that the authorities in the requesting jurisdiction gain something akin to "constructive custody" of the defendant; nor does it mean that the defendant is no longer incarcerated solely because of the unrelated offense in the other jurisdiction. It simply means that the authorities in the jurisdiction which has custody of the defendant have agreed not to release him without notice to the "holding" jurisdiction, and will turn him over to such authorities upon request. In short, whether a hold has, or could have, entered against the defendant is irrelevant for purposes of determining how much time the defendant has served "for the offense of which he is convicted."[9]

---

[9] This conclusion is supported, in our view, by our indication in *Prieskorn* that the defendant was perhaps not entitled to credit even for the eighteen days he spent in prison for the driving offense *after* he had been "arrested" in jail for the third drug offense, which was eventually dismissed as part of his plea to the first offense. We stated:

We note that the Court of Appeals granted the defendant credit in this case for eighteen days served under the driving violation sentence between September 19, 1982, the date he was charged with the third marijuana delivery offense, and September 27, 1982, the date he pleaded guilty to the March 9, 1982, delivery charge—all time being served under the traffic conviction sentence and, therefore, unrelated to the offense for which he was convicted in this case. Because the prosecutor has not cross-appealed that portion of the Court of Appeals decision, we take no action with respect to that matter. [*Prieskorn, supra,* p 344.]

The clear implication of this language is that defendant was not entitled to credit for *any* time served prior to the running of his sentence for the traffic offense. Only after that sentence had lapsed could the defendant be said to be serving presentence time "for the offense of which he [was ultimately] convicted."

We as much as admitted in *Prieskorn* that the Court in *Chattaway* was correct when it concluded that failure to give credit in cases involving multiple unrelated offenses may have a "chilling" effect on a defendant's exercise of his right to trial. See *ante,* pp 745-746. We found, however, that such concerns "do not change the language of the statute . . . ." *Prieskorn,* p 342. The language of the statute has not changed since our decision in that case. Neither does our interpretation.

C

We recognize that what ultimately concerned the Court of Appeals in this case, and in *Chattaway* and *Coyle,* was the apparent ability of the prosecution to frustrate our concurrent sentencing rule and maximize a defendant's time in prison by simply waiting until one sentence is nearly served before taking steps toward his prosecution for the other offense. However, as we stated in *Prieskorn,* the concurrent sentence rule "does not affect whether the sentence credit the defendant seeks is granted or denied. The concurrent sentence rule is simply irrelevant to this case." *Id.,* p 342.

The concurrent sentence rule provides that "in the absence of statutory authority, a sentence may not be imposed to commence at the completion or expiration of another sentence." *In re Carey,* 372 Mich 378, 380; 126 NW2d 727 (1964). In *Prieskorn,* we found that the rule "plainly" had no application there, despite the fact that the defendant was not sentenced for the drug offense until well after the driving sentence was served, since commencement of the sentence was not delayed by the court until after the sentence imposed for the driving conviction was concluded. The defendant's sentence commenced as of the date it was actually

rendered, and he received credit only for time "previously served for *that* offense." *Id.,* p 343. (Emphasis in original.)

Similarly, in this case defendant's sentence was not imposed to commence after his sentence for the federal offense had run, although as a practical matter, as in *Prieskorn,* it did not in fact begin until well after the Ohio sentence had been served. Rather, defendant's sentence for the armed robbery conviction commenced at the time it was rendered, and defendant received credit for the time he was imprisoned for *that* offense.

We cannot disagree with the Court of Appeals that this case raises the question whether the prosecution has failed to perform its duties, not by failing to put a hold or detainer on the defendant, but simply by failing to swiftly prosecute his case after being informed of his whereabouts. If so, the question then becomes whether the defendant is entitled to some remedy for such "misconduct." We do not answer that question today.

Our decision today reflects only our belief, based on our earlier ruling in *Prieskorn, supra,* that the language of the sentence credit statute does not support the conclusion by the Court of Appeals that in all cases credit is to run from the time a hold either was or could have been placed on the defendant. Section 11b itself requires credit only for time served as a result of a defendant being denied or unable to furnish bond "for the offense of which he is convicted." Where, as here, the defendant has served time not as a result of his inability to post bond for the offense for which he seeks credit, but because of his incarceration for another offense, § 11b is simply not applicable. Thus, the fact that a hold was or could have been placed on him while he was imprisoned is likewise

irrelevant for purposes of determining what credit the trial court "shall grant" under § 11b.[10]

## III

In this case, the time that defendant Adkins served in the Ohio and federal prisons prior to his release into the custody of officials from this state was time served for the offenses of which he had been convicted in those jurisdictions, and not as a result of his being denied or unable to post bond for the armed robbery and felony-firearm offenses of which he was later convicted in this state. Whether the authorities from this state did or could have entered a detainer or hold against the defendant while he was incarcerated in those other jurisdictions is therefore irrelevant for purposes of determining the amount of sentence credit to which the defendant is entitled under § 11b.

The Court of Appeals in this case erred in ordering defendant's sentence credit recalculated to include credit for time served after a detainer or hold was or could have been entered against him. However, the prosecutor has not appealed that part of the Court of Appeals decision granting the defendant credit for time served after the "hold" in this case, i.e., the request to transfer, was actually entered. Thus, we reverse the decision of the Court of Appeals only in part, and hold that defendant's sentence credit shall be recalculated to include time served after the hold was entered in this case.

RILEY, C.J., and BRICKLEY and GRIFFIN, JJ., concurred with BOYLE, J.

[10] Our opinion today, however, must not be seen as in any way *prohibiting* a sentencing judge from granting sentence credit for time served for an unrelated offense should it be decided such credit is warranted. The trial court's sentencing discretion under our indeterminate sentencing law, MCL 769.1; MSA 28.1072, clearly would permit reducing a defendant's minimum sentence should the court think such action appropriate.

LEVIN, J. (*concurring*). I agree with the majority
that the sentence credit statute[1] does not require
"that a defendant receive credit for time spent
incarcerated in other jurisdictions, *for offenses
committed while he was free on bond for the
offense for which he seeks such credit,* from the
time that a detainer or hold either was or could
have been entered against him by authorities in
the jurisdiction where the defendant is to be sen-
tenced."[2] (Emphasis supplied.)

I also agree that this Court's decision in *People
v Prieskorn,* 424 Mich 327; 381 NW2d 646 (1985),
supports that conclusion. There, as here, "[t]he
issue presented for consideration is whether defen-
dant is entitled to sentence credit in this case for
time spent incarcerated under sentence for an
unrelated offense *committed while he was free on
bond for the offense for which he now seeks sen-
tence credit." Id.,* p 330. (Emphasis supplied.) The
Court held that Prieskorn was not entitled credit.

In a separate concurring opinion in *Prieskorn,* I
said that I agreed "with the reasoning of the
opinion insofar as it states that Prieskorn is not
entitled to sentence credit for time served for an
offense committed while he was free on bond: 'To
attribute to the Legislature the intention that the
defendant be given credit in this case for the fifty-
one days served under the traffic sentence offense,
committed while he was free on bond in this case,
is to attribute to the Legislature an intent to
afford a defendant a "free" misdemeanor—one for
which no sentence of confinement need be or could
be served.' It is beyond the spirit and intendment
of the sentence credit statute to grant credit on a
felony sentence for time spent incarcerated for a

---

[1] MCL 769.11b; MSA 28.1083(2).

[2] *Ante,* p 734.

ninety-day misdemeanor that the defendant could not have committed if he had not been free on bond." *Id.,* p 345.

The conclusion that sentence credit should not be granted for time served for an offense committed while the defendant is free on bond is supported by this Court's decisions in *People v Patterson,* 392 Mich 83; 219 NW2d 31 (1974), and *Brinson v Genesee Circuit Judge,* 403 Mich 676; 272 NW2d 513 (1978).[3]

---

[3] In *Patterson,* the defendant stabbed another inmate in the prison where they were confined and was sentenced to serve a term of imprisonment commencing at the expiration of the sentence he was serving at the time of the stabbing. A statute provides that the judge may, in his discretion, impose a consecutive sentence where the offense is committed while the offender is incarcerated in a penal institution. This Court held that the defendant was not entitled to credit on the sentence imposed for the offense committed in prison for the time spent in prison between his arraignment and conviction of that offense even though the sentence credit statute literally provides for credit in all cases where a person is "denied or unable to furnish bond for the offense of which he is convicted," because to grant credit would defeat the purpose of the statute authorizing a trial judge to impose a consecutive sentence where the offense is committed while the defendant is in prison.

In *Brinson,* the defendant absconded while on bond awaiting trial on false pretense charges. He was arrested in Pennsylvania and spent thirty-eight days in Pennsylvania jails awaiting extradition. This Court held, pursuant to *Patterson,* that Brinson was not entitled to credit on the absconding sentence either for time spent in a Michigan jail after his extradition from Pennsylvania until his conviction on the false pretense charges or for time served following his conviction on the false pretense charges, but that he was entitled to credit for the thirty-eight days spent in Pennsylvania jails for which he had not received credit against the false pretenses sentences. This Court said:

"The statute mandates the grant of credit in appropriate circumstances and *is to be read to benefit defendants, People v Havey,* 11 Mich App 69, 82; 160 NW2d 629 (1968), unless the intent of a consecutive sentencing statute would be frustrated by such a reading, *Patterson, supra."* [*People v Prieskorn,* 424 Mich 327, 351-353; 381 NW2d 646 (1985) (opinion of LEVIN, J.). Emphasis in original.]

I wrote separately in *Prieskorn* to express my disagreement

> with the opinion of the Court insofar as it seeks to construe the sentence credit statute as it has been applied by the Court of Appeals in factual situations not now presented or properly before us. It is not appropriate to seek to enunciate a rule of law, in the words of the opinion of the Court, to "be applied in the countless cases not yet litigated upon myriad factual scenarios yet to develop."[3] The common-law tradition, both in the development of the common law and in the construction of statutes, so many of which are elaborations of practices and rules developed at common law, is to decide only the case at hand.
>
> We are not omniscient. We cannot appropriately, on the basis of the facts of this case, enunciate a rule applicable, again in the words of the opinion of the Court, "to cases presenting facts quite beyond our imagination today."[4]

---

[3] *Ante,* p 340.
[4] *Ante,* p 340.

---

[*Id.,* pp 345-346.]

The opinion of the Court of Appeals in the instant case is unpublished.[4] This appeal, therefore, could appropriately be decided by an order reversing the decision of the Court of Appeals citing *Prieskorn, Patterson,* and *Brinson.* There is no need to repeat and possibly elaborate[5] on the obiter dictum in the opinion of the Court in *Prieskorn.* Obiter dictum remains obiter dictum when repeated in a subsequent case where not necessary to decision.

CAVANAGH and ARCHER, JJ., concurred with LEVIN, J.

[4] *People v Adkins,* unpublished opinion per curiam, decided December 2, 1987 (Docket No. 88132).

[5] I have not parsed the opinion of the Court in the instant case to determine whether there are elaborations.