# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 20, 2016

Plaintiff-Appellee,

v

No. 328888
Washtenaw Circuit Court
LC No. 14-000983-FC

JEAN-CLAUDE TOVIAVE,

Defendant-Appellant.

Before: M.J. KELLY, P.J., and O'CONNELL and BECKERING, JJ.

PER CURIAM.

A jury convicted defendant, Jean-Claude Toviave, of three counts of first-degree child abuse, MCL 750.136b(2), and the circuit court sentenced him to serve concurrent terms of 95 months to 15 years in prison on each count, with credit for 256 days served. Defendant appeals by right, arguing that the trial court violated his right to present a defense, that the evidence to support his convictions was insufficient, and that he was not granted the appropriate amount of jail credit. For the reasons stated below, we affirm.

## I. BASIC FACTS

In 2006, the complainants, who were minors at the time, emigrated from Togo to the United States to live with defendant in Michigan. KH was either 9 or 11 years old, KK was age 12, and RP was age 14. GA, who was 17 at the time, also emigrated along with the complainants. Defendant gave each of the complainants new names and birth dates to write on their immigration papers and instructed them to act like siblings, although they were not related to each other. Defendant and his then-wife, Helene Adoboe, who also emigrated from Togo with the complainants, were to be their new "parents." The complainants testified that defendant had a number of house rules which they had to follow, including waking up by 5:00 a.m. to study, taking turns cooking and cleaning for the entire household, and handwashing defendant's laundry.

When the complainants disobeyed defendant's rules or did not complete their chores to his satisfaction, he punished them by hitting their hands and bodies with broom handles, electrical cords, cell phone charges, and plunger handles. All of the complainants testified that when defendant beat their hands they would become swollen and painful. KH testified that he suffered from blurred vision in his left eye after he was struck in the head by defendant. Defendant also punished the complainants by withholding food from them, and KH testified that

-1-

defendant withheld food from him for a week on one occasion. During this time, KH testified that defendant's wife would sneak food to him, and he also confided in his teachers, who gave him food. Two of the complainants' teachers testified that they began to send the complainants home with food that could be easily hidden, and one of KH's teachers testified that she also provided him with warm clothing to wear in the winter at school because he "would just shake" from the cold. Both of the teachers testified that they reported the situation to their superiors and to Children's Protective Services (CPS) on multiple occasions.

The complainants were eventually removed from defendant's care by CPS in January 2011. The detective who interviewed defendant testified that defendant initially claimed that his treatment of the children was acceptable discipline according to his native culture, but he later admitted that his actions may have been "excessive." The complainants were examined by a pediatrician who specialized in child abuse; the pediatrician found that KH and RP both had chronic avulsion fractures—fractures that were not likely to ever heal—of bones in the area of their wrist and forearm. The pediatrician testified that these injuries were consistent with having been repeatedly beaten on the hand and wrist area, as the complainants had reported. While their hands otherwise had normal function and mobility, the pediatrician recommended counseling for all three of the complainants, and testified that she was concerned KK suffered from post-traumatic stress disorder.

## II. RIGHT TO PRESENT A DEFENSE AND ASSOCIATED CLAIMS OF ERROR

On appeal, defendant first argues that the trial court violated his "right to present a defense, to equal protection, a fair trial and the effective assistance of counsel as a result of the trial court's refusal to appoint an expert witness and order the production of complainants' medical records." We disagree.

We review for an abuse of discretion a trial court's decision whether to grant an indigent defendant's motion for the appointment of an expert. MCL 775.15; *People v Tanner*, 469 Mich 437, 442; 671 NW2d 728 (2003). "An abuse of discretion occurs if the trial court's decision falls outside the range of principled outcomes." *Macomb Co Dep't of Human Services v Anderson*, 304 Mich App 750, 754; NW2d 408 (2014). We review de novo whether the trial court's decisions denied defendant his constitutional right to present a defense. *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002).

Pursuant to MCL 775.15, the trial court in a criminal proceeding has the discretion to summon and pay for an expert witness for an indigent defendant. However, as the statute makes clear, "a trial court is not compelled to provide funds for the appointment of an expert on demand." *Tanner*, 469 Mich at 442. Our Supreme Court has held that in order "to obtain appointment of an expert, an indigent defendant must demonstrate a 'nexus between the facts of the case and the need for an expert.' " *Id*. at 443, quoting *People v Jacobsen*, 448 Mich 639, 641; 532 NW2d 838 (1995) (quotation marks and citation omitted). "It is not enough for the defendant to show a mere possibility of assistance from the requested expert. Without an indication that expert testimony would likely benefit the defense, a trial court does not abuse its discretion in denying a defendant's motion for appointment of an expert witness." *Tanner*, 469 Mich at 443 (quotation marks and citation omitted).

Because defendant failed to show a nexus between the facts of this case and the need for an expert witness, we hold that the trial court did not abuse its discretion in denying defendant's request that his named expert conduct psychiatric evaluations of the complainants. Defendant argued in the trial court that psychiatric evaluations of the complainants were necessary because the statute under which he was charged required the prosecution to prove that he "knowingly or intentionally cause[d] serious physical or serious mental harm to a child." MCL 750.136b(2). Thus, whether the complainants had suffered serious physical or mental harm as defined by the statute was an issue of material fact, which the jury could more properly decide with the benefit of expert testimony. Nevertheless, defendant did not identify any facts in this case that required expert analysis or explanation for the jury to understand. Further, defendant did not indicate how the evaluation and testimony would likely benefit his case. *Tanner*, 469 Mich at 443. Even on appeal, he asserts only that the requested psychiatric evaluations "may have revealed exculpatory evidence." MCL 775.15. Thus, in neither the trial court nor in this Court does defendant do more than hint at "a mere possibility of assistance from the requested expert." *Tanner*, 469 Mich at 443. Because defendant did no more than imply that the psychiatric evaluations of the complainants might help his defense, and did not show that he was unable to "safely proceed to a trial" absent such evaluations, the trial court did not abuse its discretion by denying defendant's request. *Id*.

With respect to defendant's claimed deprivation of his right to present a defense, "[t]he right to present a defense is a fundamental element of due process . . . ." *People v Anstey*, 476 Mich 436, 460; 719 NW2d 579 (2006), quoting *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984). The right to present a defense means, "at a minimum, that criminal defendants have the right to . . . put before a jury evidence that might influence the determination of guilt." *Id*. quoting *Pennsylvania v Ritchie*, 480 US 39, 56; 107 S Ct 989; 94 L Ed2d 40 (1987). The defense theory in the instant case was that, whatever harms the prosecution accused defendant of inflicting on the complainants, they did not meet the criterion of "serious physical harm" or "serious mental harm" as defined by MCL 750.136b. However, as described above, defendant did not demonstrate a "nexus between the facts of the case and the need for an expert," or show more than a mere possibility that the requested evaluations would benefit his defense. *Tanner*, 469 Mich at 443 (quotation marks and citation omitted). Because defendant did not show how, or even that, the requested psychiatric evaluations would benefit his defense, we cannot conclude that the trial court's denial of defendant's motion for an expert witness deprived him of his right to present a defense. His equal protection claim fails for the same reason.

As part of his claim of error on this issue, defendant also contends that his trial counsel was ineffective for failing to present witnesses who could provide expert testimony regarding psychological issues in the case and forensic interviewing. Because defendant did not move for a new trial or request an evidentiary hearing on the basis of defense counsel's performance, *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999), this issue comes to the Court unpreserved. Our review of unpreserved claims of ineffective assistance of counsel is limited to errors apparent on the record. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

Criminal defendants have the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. Generally, to establish ineffective assistance of counsel, a defendant must show that: (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) there is a reasonable probability that, but for

counsel's error, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Assuming for the sake of argument that defense counsel's performance was constitutionally deficient, defendant has not established that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *Id*. As described above, the evidence was sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that defendant knowingly or intentionally caused the complainants serious physical harm, and, thus, was guilty of first-degree child abuse. Therefore, even if defense counsel had shown that defendant had not caused the complainants serious mental harm, the evidence was sufficient to convict defendant based on a showing of serious physical harm. Defendant asserts for the first time on appeal that counsel should have presented an expert on forensic interviewing techniques, but does little more than speculate regarding how such expert testimony would have affected the outcome of the case. Accordingly, we conclude that defendant has failed to establish his claim of ineffective assistance of counsel.

Defendant also argues that the trial court abused its discretion when it declined to order the production of the complainants' medical records from 2006, and that this abuse of discretion also deprived him of the right to present a defense, the right to a fair trial, and the right to an effectively prepared counsel. This claim is without merit. Although the charges against defendant originally encompassed abuse that occurred between June 2006 and January 2011, by the time of trial the scope had been narrowed to include only offenses that occurred between November 1, 2008 and January 31, 2011. In light of this, defendant has not indicated why medical records from 2006 were relevant to his defense, nor explained why the records were necessary in order to ensure a fair trial. Based on the time range of the offenses included in the charges, we find no basis for concluding that the medical records were relevant to the defense or that the trial court's refusal to order production of the records violated defendant's right to present a defense. For the same reasons we reject defendant's contention that the trial court's refusal to order production of the records somehow rendered defense counsel ineffective.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that the evidence was insufficient to support his convictions for first-degree child abuse. Specifically, defendant contends that the prosecution's evidence was insufficient to establish beyond a reasonable doubt that he had the specific intent necessary to satisfy the elements of first-degree child abuse, or to establish beyond a reasonable doubt that his method of disciplining the complainants was unreasonable. We disagree.

We review challenges to the sufficiency of the evidence de novo. *People v Malone*, 287 Mich App 648, 654; 792 NW2d 7 (2010). "The evidence is sufficient to convict a defendant when a rational factfinder could determine that the prosecutor proved every element of the crimes charged beyond a reasonable doubt." *People v Cain*, 238 Mich App 95, 117; 605 NW2d 28 (1999). "The jury is the sole judge of the facts; its role includes listening to testimony, weighing evidence, and making credibility determinations." *People v Mardlin*, 487 Mich 609, 626; 790 NW2d 607 (2010). Thus, "[t]he weight to be given to admitted evidence is left to a properly instructed jury's common sense and judgment." *Id*. Conflicts in the evidence are resolved in favor of the prosecution, and circumstantial evidence and reasonable inferences

arising from that evidence may constitute proof of the elements of the crime. *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010).

MCL 750.136b(2) provides that "[a] person is guilty of child abuse in the first degree if the person knowingly or intentionally causes serious physical or serious mental harm to a child." MCL 750.136b(1)(f) defines "serious physical harm" as "any physical injury to a child that seriously impairs the child's health or physical well-being, including, but not limited to, brain damage, a skull or bone fracture, subdural hemorrhage or hematoma, dislocation, sprain, internal injury, poisoning, burn or scald, or severe cut." MCL 750.136b(1)(g) defines "serious mental harm" as "an injury to a child's mental condition or welfare that is not necessarily permanent but results in visibly demonstrable manifestations of a substantial disorder of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life."

Defendant argues that first-degree child abuse is a specific intent offense, meaning that the prosecutor was required to prove that defendant had the specific intent to cause serious physical or emotional harm, or knew that serious physical or emotional harm would be caused by his actions. In support of his argument, defendant cites *People v Gould*, 225 Mich App 79, 86; 570 NW2d 140 (1997) (holding that a specific intent is an element of first-degree child abuse). We note that although this Court held in *Gould* that first-degree child abuse was a specific intent crime, our Supreme Court later held that a trial court need not instruct the jury in a first-degree child abuse case on specific intent as long as it instructs the jury that the defendant acted "knowingly" or "intentionally." See *People v Maynor*, 470 Mich 289, 295-297; 683 NW2d 565 (2004). In *Maynor*, the Supreme Court stated:

> The need to draw the common-law distinction between "specific" and "general" intent is not required under the plain language of the statute, as long as the jury is instructed that it must find that defendant either knowingly or intentionally caused the harm. Moreover, the enactment of MCL 768.37, which abolished the defense of voluntary intoxication except in one narrow circumstance, has significantly diminished the need to categorize crimes as being either "specific" or "general" intent crimes. [*Id*. at 296-297.]

The trial court in the instant case instructed the jury that the prosecution had to prove that defendant had "either knowingly or intentionally caused serious physical harm, and/or serious mental harm to" the complainants. This was sufficient under *Maynor* to address the intent element of the offense.

Further, our review of the record convinces us that the prosecution presented sufficient evidence from which a rational factfinder could conclude beyond a reasonable doubt that defendant knew or intended that his actions would cause serious physical or mental harm to the complainants. The jury heard testimony indicating that defendant's repeated beatings of the complainants resulted in fractures, internal injuries, and severe pain. Defendant admitted to multiple witnesses that he hit the complainants, and even that his actions had resulted in physical injuries. As described above, the complainants testified that defendant punished them by hitting their hands and bodies with broom handles, electrical cords, cell phone chargers, and plunger handles, and that such beatings were too numerous to count. All of the complainants testified

that when defendant beat their hands they would become swollen and painful, and medical evidence showed that repeated beatings had resulted in chronic avulsion fractures for KH and RP. In addition, the court heard testimony that one beating left KK with "a little bit of blood in her eye," and another beating left her with such pain in her hands that she had to be taken to the hospital, while KH was left with blurred vision and headaches after defendant struck him on his head.

In addition to testimony about serious physical harm, the jury also heard how the environment of fear and paranoia defendant created resulted in thought patterns that significantly affected the complainants' ability to "cope with the ordinary demands of life." MCL 750.136b(1)(g). The jury heard complainants testify that defendant would punish them by withholding food for days, and in some cases weeks, and that they were afraid to respond to their teachers' concerns about them for fear that defendant would find out and beat them. RP said that he became paranoid because he knew defendant would always find a reason to beat him. KH said that he continued to have difficulty trusting people and trouble focusing, and he was still afraid of getting any grade below an A. One of KH's teachers testified that he was an excellent student, but withdrawn and constantly looking over his shoulder, and that his demeanor "progressively became hopeless." The pediatrician who examined the complainants for abuse after they were removed from defendant's care said that RP and KK reported being frequently hungry and became upset when talking about beatings or food. She recommended counseling for all three complainants, and was concerned that KK suffered from post-traumatic stress disorder. In light of the foregoing, we conclude that the prosecutor presented evidence at trial that, if believed, was sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that defendant knowingly acted in ways that caused serious physical or mental harm to the complainants and, therefore, that he was guilty of first-degree child abuse. *Cain*, 238 Mich App at 117.

Although defendant did not raise this argument in the trial court, he argues on appeal that the evidence was insufficient to sustain his convictions because the prosecution failed to prove that his conduct toward the complainants was more than simply reasonable disciplinary measures. We disagree.

The child abuse statute does not prohibit a parent or guardian from "taking steps to reasonably discipline a child, including the use of reasonable force." MCL 750.136b(9). "A parent who acts in good faith with an honest belief that the given discipline is done for the benefit of the child will not be subjected to judicial intervention." *People v Alderete*, 132 Mich App 351, 357; 347 NW2d 229 (1984). "However, a showing that the punishment was cruel and unreasonably severe will negate any claim of good faith on behalf of the parent." *Id*, citing *People v Green*, 155 Mich 524, 532-533; 119 NW 187 (1909). Whether a defendant's actions constitute reasonable discipline is a question for the finder of fact. See *People v Sherman-Huffman*, 466 Mich 39, 42-43; 642 NW2d 339 (2002).

Detective Tom Boivin testified that, in his interview with defendant, defendant initially claimed that his actions were appropriate disciplinary measures within the context of his Togolese culture, but conceded by the end of the interview that his means of discipline may have been excessive. Siobhan Gorman, a nurse practitioner who treated KK for pain and swelling in her hand, testified that defendant admitted that KK's injury resulted from his having hit her in

the hand with a broom handle, and that he explained that this was acceptable discipline in Togo. Were this the only evidence the jury heard, it might support a finding of good faith, *Alderete*, 132 Mich App at 357, although whether defendant's disciplinary measures were reasonable would still be a question of fact, see *Sherman-Huffman*, 466 Mich at 42-43.

However, the jury also heard abundant testimony indicating that defendant hit complainants when he was angry, when he was drunk, or when they had committed some minor infraction, such as laying a piece of paper on the table instead of handing it to him. In addition, the jury heard that defendant used a variety of implements to hit the complainants, including broom handles, plunger handles, cords, and an ice scrapper, and that he would also punch and kick them, and would withhold food for days. As described above, evidence was presented from which a rational trier of fact could find that the physical injuries defendant knowingly inflicted were serious, and that the environment he created was one of fear, paranoia, and isolation. Although no direct evidence of Togolese child-disciplining practices was presented at trial, RP admitted that parents could hit their children in Africa, but indicated that even his parents never beat him as defendant did.

In light of the foregoing, we conclude that the evidence the prosecution presented regarding the rationale for, and the frequency, means, method, severity, and results of defendant's alleged disciplinary measures, if believed by the jury, was sufficient to support a rational juror's rejection of defendant's claim that he acted in good faith to reasonably discipline the complainants. See *Alderete*, 132 Mich App at 357; *Sherman-Huffman*, 466 Mich at 42-43.

## IV. JAIL CREDIT

Finally, defendant charges the trial court with error for failing to credit his sentence with the time he served in federal custody on separate charges, and the time he served in state custody on previously dismissed charges that were related to this case. We conclude from our review of the record that the trial court gave defendant the correct amount of jail credit, and that defendant is not entitled to additional credit.

In April of 2011, defendant was indicted in federal district court on federal charges including "fraud and misuse of visas, forced labor, trafficking in peonage, slavery, involuntary servitude, frauds and swindles, and bringing in and harboring aliens." In May of 2011, defendant was charged in state court with three counts of third-degree child abuse. Defendant was convicted in the federal case and sentenced to serve a maximum of 135 months in prison. Following his federal convictions, the state charges were dismissed without prejudice.

In an August 4, 2014 decision, the Sixth Circuit Court of Appeals reversed the most serious of defendant's federal convictions, *United States v Toviave*, 761 F3d 623 (CA 6, 2014), and on October 22, 2014, defendant's federal sentence was amended to time served (21 months).[1] Michigan authorities arrested defendant two days later and eventually charged him in

---

[1] According to the amended judgment, the new judgment was imposed on October 20, 2014, and signed by a United States District Court judge for the Eastern District of Michigan on October

-7-

the instant case with three counts of first-degree child abuse. Defendant was convicted on April 30, 2015, and sentenced on June 22, 2015. Defendant contends that he is entitled to jail credit for the time he served when he was originally charged with three counts of third-degree child abuse in the state court, and that he is entitled to credit for the time he served in federal custody.

Our review of the record indicates that defendant received credit for spending November 21 to December 6, 2012, in jail, relative to the 2011 state charges. According to his presentence investigation report, defendant received 256 days of credit: 15 days for the 2012 incarceration, and 241 days based on the time he served in jail following his arrest on October 24, 2014 until his sentencing on June 22, 2015. Defendant does not indicate that the jail credit in the report was miscalculated, nor does he suggest an alternate number of days to which he might have been entitled. Consequently, we conclude that the calculation of jail credit in the presentence report was accurate, and that defendant received the amount of jail credit to which he was entitled based on the time he served in jail both for the instant offenses and for the previously charged state offenses.

Defendant also argues that he is entitled to jail credit for the 21 months he served in federal prison in connection with his federal convictions. Although defendant's argument as to why he is entitled to credit for this time is not clear, he seems to suggest that the state unduly delayed charging him while he was in federal custody awaiting trial on the federal charges. Relying on our Supreme Court's opinion in *People v Adkins*, 433 Mich 732; 449 NW2d 400 (1989), defendant argues that where there has been an inordinate or unexplained delay in bringing a defendant to justice, the defendant is entitled to some remedy for such "misconduct" by the state, including non-statutory jail credit.

Defendant's reliance on *Adkins* is misplaced. Not only did the *Adkins* Court expressly leave open the question of whether a defendant would be entitled to some remedy where the prosecution failed to swiftly prosecute a case, *id*. at 750, but defendant has neither alleged nor cited evidence of an inordinate or unexplained delay in the instant case. The *Adkins* Court held that the jail credit statute

> requires credit only for time served as a result of a defendant being denied or unable to furnish bond 'for the offense of which he is convicted.' Where, as here, the defendant has served time not as a result of his inability to post bond for the offense for which he seeks credit, but because of his incarceration for another offense, [MCL 769.11b] is simply not applicable. [*Id.* at 750.]

However, the Court further stated that under Michigan sentencing laws, a trial court would clearly be permitted to "reduc[e] a defendant's minimum sentence should the court think such action appropriate." *Id.* at 751 n 10.

Defendant is not entitled to jail credit under MCL 769.11b for the time he spent in federal prison because he spent time in federal prison due to his federal convictions, not because he was

22, 2014. On the same day, an arrest warrant was issued for defendant on the state charges in dispute in this matter.

denied or unable to furnish bond for the state offenses at issue here. Defendant suggests that a discretionary grant of credit is warranted because of the "inordinate or unexplained delay resulting in him losing statutory jail credit." However, defendant has not argued that the period between his arrest on the current charges and his trial constituted an unreasonable delay; and, as indicated above, he received credit for the time he spent in jail awaiting trial. Because defendant has failed to show any inordinate or unexplained delay that warrants remedy by crediting his current sentence for the time he spent in federal prison, or advanced any other reason justifying such credit, we conclude that defendant is not entitled to additional credit based on his interpretation of *Adkins*. Further, because there was no basis for defense counsel to ask for additional credit, counsel was not ineffective for failing to request it or to object to the court's order granting 256 days jail credit. *People v Gist*, 188 Mich App 610, 613; 470 NW2d 475 (1991) (holding that defense counsel was not ineffective for failing to object where an objection would have been pointless).

Affirmed.

/s/ Michael J. Kelly
/s/ Peter D. O'Connell
/s/ Jane M. Beckering