# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

FRED HUSTON-DARNELL CHANDLER,

        Defendant-Appellant.

UNPUBLISHED
August 22, 2017

No. 333207
Muskegon Circuit Court
LC No. 15-066436-FH

Before: BOONSTRA, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his conviction for third-degree fleeing an officer in violation of MCL 257.602a(3). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 18 months to 10 years' imprisonment. Defendant received 10 days of jail credit for his conviction. We affirm.

This case arose from defendant's flight from a police officer after he was directed to stop. On May 6, 2015, an officer of the Muskegon Police Department was dispatched to a Dollar General store to investigate a retail fraud in progress by an African-American male, who was wearing a blue shirt and black jeans and who was seen exiting the rear door of the business with merchandise in black plastic bags. The officer drove to the alley behind the store and pulled his police cruiser directly in front of a black Cadillac. He observed a person fitting the suspect's description walk to the driver's side of the Cadillac and enter the car. The officer exited his vehicle, approached the man, and asked him if he just left the store. The man denied leaving the store, but the officer noticed plastic bags containing something in the Cadillac's backseat, so he asked the man to step out of his car. The suspect refused and started backing up his car. The officer ordered him to stop, but the man took off at a high speed down residential streets. The officer pursued the suspect until he was ordered to terminate the pursuit.

About two weeks later, a detective received a tip from a confidential informant that defendant was the person who fled in the Cadillac. The detective sent the officer a photograph of defendant, and the officer immediately recognized him as the suspect. Defendant was arrested and later released on bond. Shortly thereafter, defendant was arrested and jailed pending trial for

committing an unarmed robbery at a K-Mart. He remained in jail while he awaited trials for each offense.[1]

On appeal, defendant raises several claims of error that he believes entitle him to a new trial. First, he claims that he was provided ineffective assistance in this case because his defense counsel failed to do the following: (1) adequately prepare an alibi witness and subpoena and call a different alibi witness; (2) raise a *Batson*[2] challenge when the only African-American juror was excused near the end of the trial; (3) request information about the confidential informant before trial; and (4) seek revocation of his bond in this case so he could have additional credit for days of incarceration after counsel was reappointed. We find no merit to these claims.

*Ineffective Assistance of Counsel.* To preserve a claim of ineffective assistance of counsel, defendant must move in the trial court for a new trial or a *Ginther* hearing.[3] *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Here, defendant did not move in the trial court for a new trial or a *Ginther* hearing. Defendant did, however, file a motion to remand to permit him to move in the trial court for a new trial or a *Ginther* hearing. We denied defendant's motion because he failed to demonstrate that further factual development of the record or an initial ruling by the trial court was necessary for this Court to review the issues on appeal. Consequently, no testimonial record was made in the trial court pursuant to a motion for new trial or *Ginther* hearing. Therefore, our review is limited to mistakes apparent on the record. *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009).

Defendant bears the burden of establishing that defense counsel provided ineffective assistance by showing that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (internal citation and quotation marks omitted). Defendant must overcome a strong presumption that defense counsel provided effective assistance. *Seals*, 285 Mich App at 17. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).

Defendant's claims of ineffective assistance of counsel involve constitutional and statutory questions. We review both de novo. *People v Stewart*, 472 Mich 624, 631; 698 NW2d 340 (2005); *Harvey v Michigan*, 469 Mich 1, 6; 664 NW2d 767 (2003).

---

[1] The present appeal involves only the circumstances following the theft at the Dollar General.

[2] *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986).

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

*Alibi Witnesses*.  Defendant argues that defense counsel was ineffective because counsel called only one of his alibi witnesses whom defendant contends was unprepared to testify confidently that, on the date of the incident, defendant was in Flint, Michigan, for the weekend at a friend's home.  The alibi witness whom defense counsel called testified that she and defendant lived together and that defendant was the father of her child.  She testified that she traveled with defendant to Flint on the date of the incident.  During cross-examination, however, she admitted that she could not be sure of the exact date of their travel to Flint.  Defendant claims that defense counsel did not prepare the witness and should have subpoenaed one of his other alibi witnesses, the friend in Flint, to shore up the alibi defense.

Addressing first defendant's girlfriend's testimony, defendant appears to take issue with his girlfriend's inability to state definitively that defendant was in Flint on the night in question, and suggests that defense counsel should have prepared her to offer more definitive testimony.  Assuming that the girlfriend's testimony was truthful, defendant's suggestion that his counsel should have "prepared" her to testify otherwise amounts to coaching at best, and presenting a witness to commit perjury at worst.  Counsel is under an ethical obligation neither to coach witnesses nor instruct them to commit perjury, and a claim of ineffective assistance cannot be premised on counsel's refusal to do so.  *People v LaVearn*, 448 Mich. 207, 216-218; 528 NW2d 721 (1995); see also MRPC 3.3; MRPC 3.4.

Regarding the other purported alibi witness, there is nothing in the trial court record that suggests the purported witness could have actually provided defendant with an alibi.  The record contains no evidence concerning his proposed testimony, and no evidentiary hearing was held on the matter.  Thus, what the witness's testimony actually would have been if called to testify at trial was not presented to the trial court.  Defendant "has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel," *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999), which he has not done.  Consequently, no mistake is apparent on the record respecting defense counsel's failure to call that alibi witness.  *Seals*, 285 Mich App at 20-21.  On appeal, defendant has failed to present any substantive evidence or even an argument that overcomes the presumption that not subpoenaing or calling that witness to testify was a matter of defense counsel's trial strategy.  *Avant*, 235 Mich App at 508.  Further, we believe defendant's claim of error on this basis lacks merit because defense counsel developed and presented through one of his alibi witnesses the defense that defendant was in Flint when the incident occurred.  "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work."  *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004).

Therefore, defendant has failed to establish that defense counsel's performance fell below an objective standard of reasonableness.  Defendant also has failed to prove that, but for his counsel's performance, there is a reasonable probability that the outcome of his trial would have been different.  *Trakhtenberg*, 493 Mich at 51.  Accordingly, defendant's ineffective assistance of counsel claim based on alibi witnesses lacks merit.

*No* Batson *Challenge*.  Defendant next argues that his defense counsel provided ineffective assistance because he did not raise a *Batson* challenge when the only African-American juror was excused late in the trial.  Under *Batson*, a prosecutor is prohibited from using peremptory challenges to strike a juror from a defendant's jury on the basis of race.  *Batson v Kentucky*, 476 US 79, 89; 106 S Ct 1712; 90 L Ed 2d 69 (1986).  The United States

Supreme Court has prescribed a three-step process for determining whether impropriety existed in the use of peremptory challenges. First, the opponent of the challenge must establish a prima facie showing of racial discrimination. *Id*. at 94-97. Second, if a prima facie showing is made, the burden shifts to the challenging party to establish a race neutral explanation for the challenge. *Id*. at 97. Finally, the trial court must decide if the opponent of the challenge proved purposeful discrimination. *Id*. at 100.

To establish a prima facie case, defendant must show that: "(1) [defendant] is a member of a cognizable racial group; (2) the proponent has exercised a peremptory challenge to exclude a member of a certain racial group from the jury pool; and (3) all the relevant circumstances raise an inference that the proponent of the challenge excluded the prospective juror on the basis of race." *People v Knight*, 473 Mich 324, 336; 701 NW2d 715 (2005). "That the prosecutor did not try to remove all blacks from the jury is strong evidence against a showing of discrimination." *People v Eccles*, 260 Mich App 379, 388; 677 NW2d 76 (2004) (internal citation and quotation notation omitted).

During voir dire, the prosecution did not use a peremptory challenge to strike the African-American juror. The juror was actually selected and served until late in the proceedings when the prosecution discovered that the juror had significant contacts with the prosecutor's office in relation to another case. When the issue arose, defense counsel suggested that the remedy would be to dismiss the juror from the jury. The trial court and counsel discussed the matter and agreed that the prosecutor should confirm the contact with the prosecutor's office, and if confirmed, the juror would be excused. Once the prosecutor confirmed the contact, the juror was excused discreetly before the jury was sent to deliberate. Implicit in the decision to excuse the juror was consideration for fairness and impartiality in the trial court proceedings. By excluding him for his contacts with the prosecution, the trial court removed a potentially biased juror.

The trial court did not engage in a *Batson* analysis, nor was it required to do so because what occurred in the proceedings was not a situation where *Batson* applied. The Michigan Supreme Court observed in *Knight*, 473 Mich at 349:

> [p]rotecting a defendant's right to a fair and impartial jury does not entail ensuring any particular racial composition of the jury. The goal of *Batson* and its progeny is to promote racial neutrality in the selection of a jury and to avoid the systematic and intentional exclusion of any racial group.

The mere fact that an African-American was excused from the jury under the circumstances here provided defendant no basis for raising a *Batson* challenge. Nothing in the trial court record even remotely suggested that the juror was excused because of his race. Even defendant makes no claim on appeal that the prosecution brought the matter to the trial court's attention for a discriminatory purpose or otherwise engaged in gamesmanship by waiting until the jury was selected before bringing the disqualifying matter to the attention of the trial court.

We have often held that defense counsel is "not required to make a meritless motion or a futile objection." *People v Goodin*, 257 Mich App 425, 433; 668 NW2d 392 (2003). In this case, review of the trial court record establishes that a *Batson* challenge would have been

-4-

meritless and defendant's claim of ineffective assistance of counsel for defense counsel's failure to raise a *Batson* challenge fails.

*Confidential Informant.* Defendant next contends that he was provided ineffective assistance because defense counsel failed to request information about the confidential informant before trial. Defendant links this issue to another issue, which we will discuss later. Let it suffice that we find defendant's claim of ineffective assistance of counsel on this basis meritless because, as we explain below, defendant was not deprived of any right involving the non-testifying confidential informant. Moreover, defendant fails to explain what exactly he believes he would have undertaken or accomplished had his counsel obtained information regarding the confidential informant. Defendant offers nothing to overcome the strong presumption that defense counsel's conduct was sound trial strategy, has failed to establish that defense counsel's performance fell below an objective standard of reasonableness, and cannot show prejudice stemming from any purported error.

*Credit for Time Served.* Defendant's last claim that he was provided ineffective assistance likewise fails. Early in this case, with the assistance of his appointed attorney, defendant was released on bond. Nonetheless, while out on bond, defendant allegedly committed another larceny and was jailed on that charge. While in jail pending trial on that other case, defendant opted to represent himself temporarily in this case. He personally raised an issue about his bond before the trial court but did not pursue it. Later, he sought and obtained appointed counsel. At his sentencing, defendant received 10 days sentencing credit for time that he was in jail related to the offense in this case. He now contends that when reappointed by the trial court, defense counsel should have moved for bond revocation because he believes he was entitled to credit for the time he was in jail for the other offense from December 15, 2015, the date he was reappointed counsel, to April 18, 2016, the date he was sentenced in this case.[4]

Michigan's sentence credit statute, MCL 769.11b, provides:

> Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing.

In *People v Prieskorn*, 424 Mich 327; 381 NW2d 646 (1985), our Supreme Court considered whether the defendant was "entitled to sentence credit . . . for time spent incarcerated under sentence for an unrelated offense committed while he was free on bond for the offense for which he" sought sentence credit. *Id.* at 330. Based upon the legislative intent for application of MCL 769.11b, the Supreme Court held:

---

[4] At his sentencing hearing, defense counsel argued that he was entitled to credit for all of the time he was incarcerated while awaiting trial on the other offense up to the date of his sentencing in this case.

> We believe the sentence credit statute neither requires nor permits sentence credit in cases, such as the one before us, where a defendant is released on bond following entry of charges arising from one offense and, pending disposition of those charges, is subsequently incarcerated as a result of charges arising out of an unrelated offense or circumstance and then seeks credit in the former case for that latter period of confinement. [*Id*. at 340.]

Several years later, our Supreme Court reiterated its earlier holding: When "the defendant has served time not as a result of his inability to post bond for the offense for which he seeks credit, but because of his incarceration for another offense, [MCL 769.11b] is simply not applicable." *People v Adkins*, 433 Mich 732, 750; 449 NW2d 400 (1989).

In this case, defendant essentially argues that bond revocation would have retroactively converted the time he spent in jail for the other offense into time served in this case. Defendant, however, cites no authority for this proposition. Under *Prieskorn* and *Adkins*, defendant was clearly not entitled to jail credit under MCL 769.11b. For defendant to receive credit in accordance with the statutory provision, he had to establish that his confinement was the result of an inability to post bond on the charged offense, not based on another reason. *People v Wagner*, 193 Mich App 679, 682; 485 NW2d 133 (1992); see also *Prieskorn*, 424 Mich at 344 ("To be entitled to credit for presentence time served, a defendant must have been incarcerated for the offense of which he is convicted."). As our Court held in *People v Scott*,

> Because the primary purpose of the sentencing credit statute is to equalize the position of one who cannot post bond with that of a person who is financially able to do so, a showing that presentence confinement was the result of an inability to post bond is an essential prerequisite to the award of sentence credit under the statute. [216 Mich App 196, 199; 548 NW2d 678 (1996).]

Here, defendant was not confined a second time because of an inability to afford bond through no fault of his own; rather, defendant was confined because he had been charged with having committed a second crime during the period that he had been released on bond for the first crime. There is nothing to suggest that the Legislature enacted MCL 769.11b as a consolation for repeat offenders. Thus, because defendant's time was served awaiting trial on the other offense, defendant was not entitled to recalculation of the credit given for days served in jail for his other offense even if his counsel had moved for revocation of his bond in this case. This is simply another instance where defendant claims defense counsel was required to make a meritless motion or a futile objection.

For all of these reasons, we hold that defendant was provided effective assistance of counsel. He is not entitled to relief because he was not deprived of his defense or prejudiced by his counsel's performance, and a reasonable probability does not exist that, but for defense counsel's conduct, the outcome would have been different.

*Other-Acts Evidence.* Defendant next argues that the trial court erred by allowing the prosecution to elicit testimony from witnesses of other acts under MRE 404(b) regarding defendant's apprehension and conviction for a 2011 incident involving retail fraud and flight

from the police. Defendant contends that he was denied due process and did not receive a fair trial because the testimony amounted to inadmissible propensity evidence. We disagree.

Admission of other-acts evidence is controlled by MRE 404(b)(1):

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

We review for an abuse of discretion a trial court's decision regarding admissibility of evidence. *People v Taylor*, 252 Mich App 519, 521; 652 NW2d 526 (2002); *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998). An abuse of discretion occurs when the trial court chooses an outcome that is outside the range of principled outcomes. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010).

In *People v Sabin*, 463 Mich 43, 55-56; 614 NW2d 888 (2000), the Michigan Supreme Court held that a trial court does not abuse its discretion if its admission of other-acts evidence meets the three-part test articulated in *Huddleston v United States*, 485 US 681, 691-692; 108 S Ct 1496; 99 L Ed 2d 771 (1988), that was adopted in *People v VanderVliet*, 444 Mich 52, 74; 508 NW2d 114 (1993). Under that test:

First, the prosecutor must offer the other acts evidence under something other than a character to conduct or propensity theory. MRE 404(b). Second, the evidence must be relevant under MRE 402, as enforced through MRE 104(b), to an issue of fact of consequence at trial. Third, under MRE 403, a determination must be made whether the danger of undue prejudice substantially outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decision of this kind under Rule 403. [*Sabin*, 463 Mich at 55-56 (selected internal citations and quotation notation omitted).]

*Sabin* clarified that MRE 404(b) is a rule of inclusion and not exclusion, but when MRE 404(b) other-acts evidence is admitted, "the trial court upon request, may provide a limiting instruction under MRE 105." *Id*. at 56. Moreover, "evidence of a defendant's similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *Id*. at 63. There must be such a concurrence of common features that the charged acts and the other acts are logically seen as part of a general plan, scheme, or design. *Id*. at 63-65.

In this case, the prosecution sought admission of the 2011 incident to establish defendant's identification, lack of mistake, motive, and scheme, plan, or system of fleeing and eluding police during his commission of retail fraud. Thus, under the first prong of the

*Huddleston* test, the prosecution offered the evidence for something other than defendant's character or propensity to commit the offense.

The prosecution's explanation also met the second prong of the *Huddleston* test because the evidence of a prior incident of fleeing from police was relevant to issues of fact of consequence to this case: identity and plan. Further, the other-acts evidence here had the requisite similarity required by *Sabin* for admission because the two incidents had a concurrence of common features so that the charged acts and the other acts were logically part of a general scheme, plan, or system. One aspect of defendant's scheme, plan, or system was to commit retail fraud by robbing retail establishments by walking out of stores with goods and then taking off in his car to evade capture by the police. While evading the police, defendant drove at an exceedingly high rate of speed through residential areas. Defendant had done the same thing in 2011 when he robbed a Plumbs store and was only apprehended when he crashed his car. Defendant's conduct in this case was essentially the same. Defendant stole goods from the Dollar General by walking out of the store and, when confronted, he took off through residential streets at a high rate of speed. Because the charged and uncharged acts were similar, the trial court did not abuse its discretion by admitting evidence of defendant's other acts under MRE 404(b).

Regarding the third prong of the *Huddleston* test, the trial court reviewed MRE 404(b) and articulated its ruling in detail on the record. Because identity of the perpetrator was an issue in the case, the trial court held that the evidence of scheme, plan, or system was relevant at defendant's trial and was not unduly prejudicial. The trial court correctly applied the *Huddleston* test and the requisite similarity test specified in *Sabin*. The trial court, therefore, properly overruled defense counsel's objection to the admission of the other-acts evidence. Nevertheless, to prevent the possibility that the jurors might use the evidence to conclude that defendant had a propensity to commit the charged offense, the trial court gave them a limiting instruction, the standard instruction regarding other acts evidence set forth in M Crim JI 4.11.

As we have stated previously, jurors are presumed to have followed instructions "and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Significantly, defendant does not argue that the jurors disobeyed the trial court's instruction. Instead, defendant asserts essentially that *Sabin* required that, because his 2011 incident was not exactly the same as the 2015 incident, the jurors were prohibited from considering it as evidence of a scheme, plan, or system of doing an act or for identification purposes. *Sabin*, however, did not transform MRE 404(b) into a rule of exclusion.

Review of the trial court record establishes that the trial court correctly applied the *Huddleston* test and its decision to admit other acts evidence under MRE 404(b) was not an abuse of its discretion. Defendant was not denied due process with respect to the other-acts evidence. Therefore, he is not entitled to a new trial.

*Officer's Identification of Defendant.* Defendant next claims that he is entitled to a new trial because the trial court denied his pretrial motion in limine. In that motion, defendant sought to exclude the responding police officer as a witness and suppress his identification of defendant because the police officer identified defendant from a single photo he received from the

detective. Defendant contends that the single photo was impermissibly suggestive and led to misidentification. We disagree.

We review for clear error the trial court's determination in a suppression hearing regarding the admission of identification evidence. *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013). Clear error exists when this Court is left with a definite and firm conviction that a mistake was made. *Id*. We review de novo issues of law relevant to a motion to suppress. *Id*.

A photographic identification procedure may violate a defendant's right to due process if it was so impermissibly suggestive that it gave rise to a substantial likelihood of misidentification. *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993). When a witness was shown only one person or the person was singled out in some way, the witness may be tempted to conclude the person was the perpetrator of the crime. *People v Anderson*, 389 Mich 155, 178; 205 NW2d 461 (1973). Generally, if a witness identified a defendant through an improper pretrial identification procedure, the prosecution must establish an independent basis for any later in-court identification of the defendant by that witness. *People v Kachar*, 400 Mich 78, 92-97; 252 NW2d 807 (1977).

Under *People v Gray*, 457 Mich 107, 116; 577 NW2d 92 (1998), the trial court must consider the factors articulated in *Kachar*, 400 Mich at 95-96, when determining whether an independent basis existed for the admission of an in-court identification. Those factors are: (1) the witness's prior knowledge of the defendant, (2) the witness's opportunity to observe the perpetrator during the crime (including the duration of the observation, the lighting, any noise or other factors affecting sensory perception, and the proximity to the alleged criminal act), (3) the length of time between the crime and the disputed identification, (4) discrepancies between the pretrial identification description and the defendant's actual appearance, (5) any prior proper identification or failure to identify the defendant, (6) any prior identification of another as the perpetrator, (7) the mental state of the witness at the time of the crime (considering factors such as fatigue, nervous exhaustion, intoxication, and the age and intelligence of the witness), and (8) any special features of the defendant. See *Gray*, 457 Mich at 116; *Kachar*, 400 Mich at 95-96. The trial court must also consider the witness's level of certainty at the prior identification. *Kurylczyk*, 443 Mich at 306. The trial court's inquiry must focus on the totality of the circumstances. *Id*.

We have considered the trial court record and conclude that the trial court correctly considered the totality of the circumstances in relation to the factors articulated in *Gray*. The officer testified at the suppression hearing that, although he had no prior knowledge of defendant and never met him before the incident, he saw defendant's face in profile when he arrived at the scene, and he calmly observed defendant face-to-face in close proximity when he approached him and ordered him to get out of his car. That interaction occurred during daylight and nothing impeded his view of defendant's face. When challenged, the officer testified that, *based upon his face-to-face interaction with defendant at the scene*, he was absolutely certain that defendant was the suspect who fled. We find no error in the trial court's conclusion that multiple factors supported its determination that the officer had an independent basis for identifying defendant. Therefore, the trial court properly denied defendant's motion to suppress the identification, and he is not entitled to a new trial.

-9-

*Confrontation Clause.* Lastly, defendant claims that the trial court abused its discretion by denying him a mistrial because the prosecution asked the officer about the confidential informant to bolster his identification of defendant. In relation to this claim of error, defendant asserts that he was prevented from confronting the confidential informant in violation of the Confrontation Clause. We disagree.

We generally review for an abuse of discretion the denial of a motion for a mistrial. *People v Bauder*, 269 Mich App 174, 194; 712 NW2d 506 (2005). With respect to whether a defendant received due process, however, we review the matter de novo. *People v Odom*, 276 Mich App 407, 421; 740 NW2d 557 (2007). "For a due process violation to result in reversal of a criminal conviction, a defendant must prove prejudice to his or her defense." *Id*. at 421-422.

In *People v Chambers*, 277 Mich App 1; 742 NW2d 610 (2007), a case similar to this case, we addressed whether testimony regarding a tip given to the police by a nontestifying confidential informant violated the defendant's right to confront the witness. We also considered whether the defense counsel's failure to object to the testimony deprived the defendant of effective assistance of counsel. We explained as follows:

> A defendant has the right to be confronted with the witnesses against him or her. The Confrontation Clause prohibits the admission of all out-of-court testimonial statements unless the declarant was unavailable at trial and the defendant had a prior opportunity for cross-examination. A statement by a confidential informant to the authorities generally constitutes a testimonial statement. However, the Confrontation Clause does not bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted. Thus, a statement offered to show the effect of the out-of-court statement on the hearer does not violate the Confrontation Clause. Specifically, a statement offered to show why police officers acted as they did is not hearsay. [*Chambers*, 277 Mich App at 10-11 (internal citations omitted).]

We held that "the challenged testimony did not violate defendant's right of confrontation" because it "was not offered to establish the truth of the informant's tip" but "to establish and explain why the detective" surveilled the "defendant's home and how defendant came to be arrested." *Id*. at 11. The same reasoning applies in this case.

Here, the challenged testimony did not violate defendant's right of confrontation because the testimony was not offered to establish the truth of the informant's tip. Rather, the prosecution offered it to explain the police's internal process that ultimately led to defendant's arrest. "Because the Confrontation Clause does not bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted, the testimony did not violate defendant's right of confrontation." *Id*. Thus, the trial court did not plainly err when it admitted the officer's testimony. Further, because the testimony did not violate defendant's

right of confrontation, any objection to the testimony would have been futile.[5]  The trial court did not abuse its discretion.

Affirmed.

/s/ Mark T. Boonstra
/s/ Amy Ronayne Krause
/s/ Brock A. Swartzle

---

[5] Contrary to defendant's argument that his counsel's failure to object to the testimony about the confidential informant constituted ineffective assistance of counsel, for the reasons stated in *Chambers*, 277 Mich app at 10-11, defense counsel was not ineffective for failing to make a futile objection.  See supra.