*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DANDRE MARQUISE BELL,

        Defendant-Appellant.

UNPUBLISHED
June 22, 2026
9:42 AM

No. 374765
Ingham Circuit Court
LC No. 23-000044-FH

Before: KOROBKIN, P.J., and RIORDAN and MARIANI, JJ.

PER CURIAM.

Defendant is appealing his guilty-plea conviction and sentence for delivery or manufacture of methamphetamine in violation of MCL 333.7401(2)(b)(*i*). On July 12, 2024, the trial court sentenced defendant to 69 months to 20 years in prison, with credit for 57 days served, and imposed fines, costs, and fees totaling $1,608, including $500 in court costs and attorney fees of $750.[1] At the time of the imposition of this sentence, defendant already was serving a sentence for a previous, unrelated conviction, and the newly imposed July 12th sentence was concurrent to the sentence relating to his previous conviction.

Defendant now challenges, by leave granted, both his jail credit of 57 days served and the court's monetary assessment. Defendant argues that he should have been granted credit for more of the time he spent in jail after his arrest, and that court costs, attorney fees, and the late penalty should be waived or were otherwise imposed in error. We disagree with defendant as to jail credit. However, we agree with defendant as to articulation of the factual basis for the court costs and attorney fees, and for an ability-to-pay determination with respect to attorney fees and any associated late penalty. Therefore, we affirm the trial court in part, vacate in part, and remand to that court for further proceedings.

---

[1] The judgment of sentence provided that any amount not paid within 56 days would be subject to a late penalty of 20%.

## I. FACTS

On December 1, 2021, defendant was sentenced to five years' probation for aggravated stalking. In a separate case, on June 21, 2022, the Lansing Police Department Special Operations Section obtained a warrant to search a suspected drug house. That evening, as officers gathered to execute the warrant, defendant was observed exiting the driveway of the house and throwing a plastic bag from his vehicle. Officers attempted to conduct a traffic stop, but defendant successfully fled in his vehicle. The officers retrieved the bag, and the substances therein were determined to be methamphetamine, cocaine, and heroin. A warrant was authorized charging defendant with three controlled-substance crimes, along with fleeing and eluding.[2] Shortly thereafter, in a third matter, on July 29, 2022, a woman called the Lansing Police Department and said that she had been dating defendant, and defendant struck her in the face. Defendant eventually was charged with domestic violence.

On August 9, 2022, defendant was arrested for the respective warrants in the controlled-substance and the domestic-violence cases. Defendant was arraigned that day, and a $7,500, 10% bond was set for him.

On October 4, 2022, defendant was sentenced to serve 30 to 60 months prison, with credit for 292 days, for violating his probation that had been set for the aggravated-stalking conviction. This resulted in parole eligibility in about June 2024.

Meanwhile, in the case, conviction, and sentence which is the subject of this appeal, defendant and the prosecution engaged in plea negotiations and preparations for a possible trial. On February 8, 2024, a pretrial hearing was held, with defendant appearing remotely. The prosecution informed the trial court that she had extended a plea offer, "however, I believe at this time the Defendant would like to reject the offer." Defense counsel stated that defendant had asked him "to make multiple counteroffers on his behalf as it relates to sentence bargaining. My understanding is those offers have been rejected. [Defendant] wishes to proceed to trial at this point it would appear, your Honor." The trial court asked defendant why he was currently incarcerated, and defendant replied, "for the Aggravated Stalking, your Honor. That's . . . what I'm in prison for now, sir."[3]

The trial court asked the prosecution, "did you revoke his bond on this case? Is he still on bond in this case?" Defense counsel and the prosecution both answered in the negative. The trial court stated that its understanding was that defendant "wouldn't get credit for the MDOC time against any additional sentence," alluding to any sentence served in relation to the aggravated-stalking conviction. The trial court told defendant that with his probation-violation sentence on that conviction ending in June 2024, "that's coming up pretty soon, so really consecutive really

---

[2] To clarify, the eventual sentence from this controlled-substance case is being challenged in this appeal. The other cases are discussed to the extent that they are relevant for determining sentence credit in this case.

[3] This was defendant's December 1, 2021, original sentence of five years' probation for aggravated stalking that was later changed to 30 to 60 months in prison after he violated probation.

isn't going to make a whole lot of difference at this point."  Then, after a recess at the February 8, 2024 hearing, the trial court proposed a 69-month minimum sentence on the methamphetamine charge to "split that difference" between the offers from each side, and both the prosecution and defense agreed.

Accordingly, defendant pled guilty to the methamphetamine charge, which is the subject of the instant appeal.  Defendant also pled guilty to the July 29, 2022, domestic-violence charge that still had been pending.  As part of the plea agreement, the remaining three charges in this case, as well as other potential charges and enhancements, were dismissed.[4]

The PSIR for this case and the domestic-violence case indicated that defendant was entitled to jail credit of 57 days, which only represented the time from August 9, 2022, to October 4, 2022, because credit was stopped after "another prison term was imposed."[5]

At sentencing, defense counsel argued that defendant was "entitled to far more jail credit than he is being given."  Defense counsel acknowledged that case law generally did not allow for jail credit for time spent serving a sentence in an unrelated case, the aggravated-stalking case, but argued the situation in this matter was distinguishable because defendant had been unable to post bond in this case, and then his sentence for the probation-violation case was imposed.  The trial court ruled that because defendant had been sentenced in a different case on October 4, 2022, his jail credit stopped with that new sentence.  In other words, the trial court agreed with the conclusion in defendant's PSIR.  Thus, the trial court granted defendant 57 days' jail credit.  As to assessments, the trial court stated, "I find . . . attorney fee of $750; . . . Costs of $500."

Shortly after sentencing, the trial court signed an order to remit prisoner funds for fines, costs, and assessments.  The order stated that defendant owed $1,608, and "the Department of Corrections shall collect 50 percent of all funds received by the prisoner over $50.00 each month."

In January 2025, appellate counsel filed a motion requesting that the trial court modify jail credit; waive court costs, attorney fees, the associated late penalty; and suspend collection of all assessments.  Specifically, defendant requested 646 days' jail credit.  He also asserted that the prison did not provide for his necessities and that he needed his funds to cover some necessities.

The trial court issued an opinion and order denying the motion.  The trial court held that once defendant was sentenced for a probation violation in the aggravated-stalking case on October 4, 2022, he could no longer earn jail credit toward the methamphetamine case, regardless of whether his bond was revoked in the matter.  The trial court also ruled that defendant had not been provided ineffective assistance of counsel because defense counsel could not have reduced his time in prison even if defense counsel had "accelerat[ed] the case faster [or] mov[ed] to revoke his bond sooner."  Finally, the trial court held that the challenged assessments were within the court's discretion, and the court elected "to maintain the costs and fees set in place at sentencing; not waive the late penalty; and will not suspend collection."

---

[4] Case No. 23-000043-FH-C30 was dismissed nolle prosequi.

[5] An apparent reference to the aggravated-stalking conviction.

Defendant filed an application for leave to appeal, raising essentially the same arguments that he raised in his post-sentencing motion. We granted the application. *People v Bell*, unpublished order of the Court of Appeals, entered June 17, 2025 (Docket No. 374765).[6]

## II. DISCUSSION

### A. SENTENCING CREDIT

Defendant argues that the trial court erred by only awarding him 57 days of jail credit in the instant case on appeal, when it should have awarded him nearly two years of jail credit under MCL 769.11b, for the time he also served for violating his probation in his aggravated-stalking case. Relatedly, defendant contends that he received the ineffective assistance of counsel because defense counsel did not promptly move to revoke his bond in the instant case. Alternatively, defendant argues that this Court should remand to the trial court because it had discretion under MCL 769.11b to award additional jail credit in the interest of fairness. We disagree with each of defendant's arguments.

"The question whether defendant is entitled to sentence credit pursuant to MCL 769.11b for time served in jail before sentencing is an issue of law that we review de novo." *People v Waclawski*, 286 Mich App 634, 688; 780 NW2d 321 (2009). This Court also reviews constitutional issues de novo. *People v Idziak*, 484 Mich 549, 554; 773 NW2d 616 (2009).

"A claim of ineffective assistance of counsel presents a mixed question of law and fact. This Court reviews a trial court's findings of fact, if any, for clear error, and reviews de novo the ultimate constitutional issue arising from an ineffective assistance of counsel claim." *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011) (internal citation omitted).

MCL 769.11b provides as follows:

> Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing.

In *People v Prieskorn*, 424 Mich 327, 330; 381 NW2d 646 (1985), our Supreme Court held that the defendant was not "entitled to sentence credit in this case for time spent incarcerated under sentence for an unrelated offense committed while he was free on bond for the offense for which he now seeks sentence credit." The Court reasoned as follows:

---

[6] The order further provided that "[t]his appeal is limited to the issues raised in the application and supporting brief." *Id*. Thus, we will not address any new issues that defendant now attempts to raise, such as equal protection, that are outside the scope of that application and supporting brief.

The statute grants no entitlement to such credit . . . because the defendant did not serve that time because of his inability to post bond for the March 9, 1982, marijuana delivery offense of which he now stands convicted. Indeed, it was because he was free on bond for that offense that he was in a position to commit the driving offense. To attribute to the Legislature the intention that the defendant be given credit in this case for the fifty-one days served under the traffic sentence offense, committed while he was free on bond in this case, is to attribute to the Legislature an intent to afford a defendant a "free" misdemeanor—one for which no sentence of confinement need be or could be served. [*Id*. at 343-344.]

Further, the Court rejected the defendant's argument that he was being "denied the benefit of the Michigan concurrent sentence rule and effectively made to serve consecutive sentences[.]" *Id*. at 342. The Court explained that the concurrent-sentence rule is violated only when a sentence is mandated to begin at the end of another sentence, and in the case at hand, the sentence was not even imposed until after his other sentence had been completely served. *Id*. at 342-343.

In *People v Adkins*, 433 Mich 732; 449 NW2d 400 (1989), our Supreme Court held that jail credit was not required for time

incarcerated in other jurisdictions, for offenses committed while [the defendant] was free on bond for the offense for which he seeks such credit, from the time that a detainer or hold either was or could have been entered against him by authorities in the jurisdiction where the defendant is to be sentenced. [*Id*. at 734.]

The Court reiterated that when "the defendant has served time not as a result of his inability to post bond for the offense for which he seeks credit, but because of his incarceration for another offense, § 11b is simply not applicable." *Id*. at 750.

In *People v Givans*, 227 Mich App 113; 575 NW2d 84 (1997), the defendant "was unable to post bond and therefore was detained at all times following his arrest on January 13, 1993." *Id*. at 125. While still incarcerated for the offense for which he could not post bond, the defendant was sentenced on March 25, 1993, for a different, separate offense that he committed on or before December 1, 1992. *Id*. This Court ruled that the defendant was entitled to jail credit only for the period between his arrest for the case at hand and his sentence in the other case (i.e., between January 13, 1993, and March 25, 1993), and therefore not entitled to credit for the two-and-a-half years between the sentencing in the other case and his eventual sentencing in the case at hand. *Id*. This Court reasoned that after March 25, 1993, the defendant "was incarcerated not for the charges in the present case, but for the [other] conviction . . . ." *Id*. at 126. This Court added that the concurrent-sentence rule, i.e., the rule prohibiting consecutive sentences unless statutorily authorized, was not implicated "because commencement of the sentence in this case was not delayed until the completion of the sentence in the [other] case . . . ." *Id*.

In *Idziak*, the issue before our Supreme Court was "whether a parolee who is convicted and sentenced to a term of imprisonment for a felony committed while on parole is entitled, under Michigan's jail credit statute, MCL 769.11b, to credit for time served in jail after his arrest on the new offense and before sentencing for that offense." *Idziak*, 484 Mich at 552. The Court held that

"under MCL 791.238(2), the parolee resumes serving his earlier sentence on the date he is arrested for the new criminal offense" and, as a result, "[s]ince the parolee is not being held in jail 'because of being denied or unable to furnish bond,' the jail credit statute does not apply." *Id*. Importantly for the purposes of the case before us, the Court added that its holding applied "regardless of his eligibility for bond or his ability to furnish it." *Id*.

In *People v Allen*, 507 Mich 597; 968 NW2d 532 (2021), our Supreme Court provided a summary of the current state of the law on MCL 769.11b: "[T]he trial court must grant jail credit when a defendant is held in jail for the offense of which he or she is ultimately convicted if he or she is denied or unable to furnish bond for that offense." *Id.* at 606. On the other hand, "individuals who are detained in jail for some reason other than the denial of or inability to furnish bond are not entitled to jail credit." *Id*. "[A] parolee is entitled to jail credit under MCL 769.11b for time spent in jail after arrest for a new offense when the MDOC does not file a parole detainer against that parolee." *Id*. at 617. This is because the parole detainer serves as "the MDOC's invocation of its detention authority . . . after which no jail credit could be awarded." *Id*. at 613.

Here, in the matter before us, the parties disagree on the meaning of MCL 769.11b. Defendant focuses on the clause, "has served any time in jail prior to sentencing because of being denied or unable to furnish bond," and argues that lack of bond is key in determining whether time in jail is credited. The prosecution focuses on the clause immediately following, "for the offense of which he is convicted," and argues that this clause limits the time credited to the time attributable to the lack of bond for the offense at issue. Under defendant's interpretation, he would be entitled to jail credit for the 646 days between his arrest and his sentencing in this case because he was imprisoned and unable to furnish bond. Under the prosecution's interpretation, the trial court correctly granted defendant credit for only the 57 days between his arrest in the instant matter and the day he was sentenced in the separate probation-violation aggravated stalking case, with that case then becoming the reason behind his continuing imprisonment.

We agree with the prosecution's view. MCL 769.11b uses the term "because of" to connect the words "has served any time in jail prior to sentencing" and the words "being denied or unable to furnish bond for the offense of which he is convicted." Thus, to be entitled to jail credit, it is not sufficient that the defendant has served time in jail and was denied/unable to furnish bond for the offense at hand. Rather, the time in jail must be served "because of" the fact that the defendant was denied/unable to furnish bond for the offense at hand.

Once a defendant has started serving a sentence on a different case, the serving of that sentence becomes the reason that he is being incarcerated. His bond status on the subsequent case becomes irrelevant—regardless of whether the trial court properly updated paperwork to indicate that bond no longer is an option, and regardless of whether the defendant has the financial means to post a hypothetical bond for release, as the defendant then is actively serving time on a sentence in an unrelated case.

The case law confirms our interpretation is in line with applicable precedent. *Idziak*, *Adkins*, *Prieskorn*, *Givans*, and *Allen* are all binding, and each supports the principle that a defendant having spent time incarcerated that merely coincides with "being denied or unable to furnish bond for the offense of which he is convicted" is not statutorily sufficient because the time served also must be "because of" that denial or inability. See MCL 769.11b. Defendant notes

factual distinctions in those cases, but such distinctions are not surprising given that cases involving MCL 769.11b are apt to present complex criminal fact patterns involving multiple presentence events across multiple offenses plus an array of reasons behind the defendant's confinement.[7]

Accordingly, we conclude that, pursuant to MCL 769.11b, defendant only was entitled to 57 days of jail credit, representing the time between his August 9, 2022, arrest in the instant case, and his October 4, 2022, sentencing in the separate probation-violation case.

Next, defendant argues that timely revocation of his bond in this case would have ensured him additional jail credit, and defense counsel's failure to timely seek revocation was ineffective assistance. We disagree.

A defendant pressing a claim of ineffective assistance of counsel must satisfy two prongs:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair [outcome] whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable. [*Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984).]

See also *People v Otto*, 348 Mich App 221, 231; 18 NW3d 336 (2023) (discussing Const 1963, art 1, § 20).

As the trial court determined, we agree that defendant cannot show prejudice. The trial court explained that defendant's bond in this case, and whether his attorney moved to have it revoked, had no bearing on his jail credit. The fact that defendant was sentenced on October 4, 2022, in the separate probation-violation case, and started to serve that sentence on that date, is the event that stopped his credit clock. The application of MCL 769.11b requires both (1) that defendant was "denied or unable to furnish bond for the offense" at issue, and (2) that the time served was "because of" that reason. Revoking defendant's bond here would not have satisfied the second statutory requirement. That is, starting on October 4, 2022, defendant was imprisoned

---

[7] See, e.g., *Prieskorn*, 424 Mich at 344 (stating that because the "days of incarceration for which the defendant seeks credit is unrelated to the offense before us for which he has been convicted, he is not entitled to sentence credit for that confinement"); *Adkins*, 433 Mich at 750 (stating that when the defendant is serving time "because of his incarceration for another offense, § 11b is simply not applicable"); *Allen*, 507 Mich at 606 (stating that "individuals who are detained in jail for some reason other than the denial of or inability to furnish bond are not entitled to jail credit").

to serve a sentence in a different case regardless of whether his bond in this instant case was revoked, making the status of his bond in this case irrelevant. Compare *Idziak*, 484 Mich at 552 ("As long as time remains on the parolee's earlier sentence, he remains incarcerated, *regardless of his eligibility for bond or his ability to furnish it*. Since the parolee is not being held in jail 'because of being denied or unable to furnish bond,' the jail credit statute does not apply.") (emphasis added).

Finally, defendant argues that even if the jail credit he seeks was not mandated by MCL 769.11b, the trial court still had the authority to award additional credit if it believed that the situation justified doing so, and that the trial court failed to recognize this discretion. In support of this argument, defendant cites footnote 10 of *Adkins*, which states as follows:

> Our opinion today, however, must not be seen as in any way *prohibiting* a sentencing judge from granting sentence credit for time served for an unrelated offense should it be decided such credit is warranted. The trial court's sentencing discretion under our indeterminate sentencing law, [MCL 769.1], clearly would permit reducing a defendant's minimum sentence should the court think such action appropriate. [*Adkins*, 433 Mich at 751 n 10.]

Recently, however, in *People v Lewis*, unpublished per curiam opinion of the Court of Appeals, issued September 16, 2025 (Docket No. 372383), we explained that the two-sentence footnote 10 of *Adkins* merely highlights the trial court's well-recognized authority to adjust its discretionary, indeterminate sentence downward depending on the particular facts of the case:

> *Adkins* does not permit a trial court to actually award additional jail credit contrary to the terms of MCL 769.11b. Nor could it, as trial courts lack discretionary authority to award additional jail credit that is not expressly authorized by statute. [*Idziak*, 484 Mich at 568-569]. Rather, *Adkins* indicated that a trial court may sentence a defendant to a lesser term to compensate for any perceived unfairness or inequity with the lack of jail credit in that case. For example, if a defendant is entitled to one day of jail credit under MCL 769.11b but the trial court believes that equity requires 30 days of jail credit, then the trial court may compensate for this discrepancy by sentencing the defendant to 23 months in prison instead of 24 months in prison. However, *Adkins* does not suggest that such a result is required. [*Id*. at 5.]

We find this reasoning persuasive and adopt it here. See *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017) ("Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value."). Therefore, the trial court did not have discretion under

MCL 769.11b to award defendant additional jail credit, and a remand is not warranted on this basis.[8]

Accordingly, we affirm the trial court's decision to award defendant 57 days of jail credit.

## B. COSTS

Defendant argues that the trial court erred by failing to waive his court costs, attorney fees, and the associated late penalty. Alternatively, defendant argues that the record does not reflect a sufficient factual basis for court costs and attorney fees. We agree in part and, therefore, vacate the trial court's orders to the extent that they impose court costs and attorney fees.

To preserve a challenge to court costs, a defendant must "object when the trial court ordered [the defendant] to pay costs." *People v Konopka (On Remand)*, 309 Mich App 345, 356; 869 NW2d 651 (2015). In his post-sentencing motion, defendant raised the subissues of lack of a factual basis for his court costs, and that he was indigent and should not have been assessed attorney fees. Therefore, these subissues are preserved. However, defendant did not raise the subissue of lack of a factual basis for his attorney fees. Therefore, this subissue is unpreserved.

"Questions of statutory interpretation are questions of law that are reviewed de novo." *People v Cunningham*, 496 Mich 145, 149; 852 NW2d 118 (2014). However, unpreserved appellate claims are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (cleaned up).

MCL 769.1k provides, in pertinent part, as follows:

(1) If a defendant enters a plea of guilty or nolo contendere or if the court determines after a hearing or trial that the defendant is guilty, both of the following apply at the time of the sentencing or at the time entry of judgment of guilt is deferred by statute or sentencing is delayed by statute:

\* \* \*

(b) The court may impose any or all of the following:

---

[8] Defendant suggests that a remand is appropriate because of "lack of due diligence by the prosecutor's office" in advancing this case. However, having reviewed the procedural posture of this case, we find nothing out of the ordinary to suggest that the prosecution unreasonably or unnecessarily delayed resolution of this case.

\* \* \*

(*iii*) Until December 31, 2026, any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case, including, but not limited to, the following:

(A) Salaries and benefits for relevant court personnel.

(B) Goods and services necessary for the operation of the court.

(C) Necessary expenses for the operation and maintenance of court buildings and facilities.

(*iv*) The expenses of providing legal assistance to the defendant.

\* \* \*

(7) The court shall make available to a defendant information about any fine, cost, or assessment imposed under subsection (1), including information about any cost imposed under subsection (1)(b)(*iii*). However, the information is not required to include the calculation of the costs involved in a particular case.

MCL 769.1*l* provides a procedure by which the Department of Corrections is to deduct prisoner funds when a prisoner has been ordered to pay an assessment under MCL 769.1k. In essence, "the department of corrections shall deduct 50% of the funds received by the prisoner in a month over $50.00 and promptly forward a payment to the court as provided in the order when the amount exceeds $100.00 . . . ." MCL 769.1*l*.

"[T]he costs imposed by a trial court must have a factual basis and must be reasonably related to the actual costs incurred by the court." *People v Johnson*, 336 Mich App 688, 701; 971 NW2d 692 (2021). Court costs "need not be separately calculated," but when a "defendant specifically challenges the lack of reasoning for the costs imposed," a trial court must "establish a factual basis" for the cost figure. *Konopka*, 309 Mich App at 359-360. Thus, in *People v Stevens*, 318 Mich App 115, 121; 896 NW2d 815 (2016), this Court remanded "for the trial court to articulate a factual basis for its imposition of costs."

In *People v Lewis*, 503 Mich 162, 163-164; 926 NW2d 796 (2018), our Supreme Court considered "whether a sentencing court may impose attorney fees upon a defendant under MCL 769.1k(1)(b)(*iv*) . . . without first making findings of fact in support of that amount." The Court ruled that the trial court could not properly do so, and remanded "to the trial court for that court to support its findings related to the cost of providing legal assistance to defendant." *Id*. at 164. The Court noted that "attorney fees can vary greatly among defendants depending on a variety of circumstances, such as the nature and number of the criminal charges." *Id*. at 168.

Defendant first argues that the trial court erred by failing to provide a factual basis for the court costs and attorney fees. We agree. At sentencing, with regard to court costs, the trial court said only, "I find . . . Costs of $500." Defendant challenged the lack of "indication of how the $500 in court costs were calculated," but the opinion that followed provided no clarification. Our

case law indicates that a remand for the trial court to provide that factual basis is appropriate. *Konopka*, 309 Mich App at 359-360; *Stevens*, 318 Mich App at 121.

As for attorney fees, the trial court again provided little explanation, saying only, "I find . . . attorney fee of $750." The trial court's subsequent opinion again provided no clarification, although defendant requested such clarification as to only court costs. Nonetheless, case law is clear that the trial court should make "findings of fact in support of that [attorney fees] amount." *Lewis*, 503 Mich at 164. Accordingly, given the manner in which defendant challenged these assessments, we conclude that the trial court's failure to provide a factual basis for attorney fees in this instance was plain error and, again, a remand is warranted on this basis.

Defendant also argues that he was indigent and, therefore, the trial court erred by imposing any court costs and attorney fees. That is, defendant argues, the trial court erred by not conducting an ability-to-pay assessment for court costs and attorney fees.

We disagree with regard to court costs because "[t]he plain language of MCL 769.1k does not require the trial court to consider a defendant's ability to pay before imposing discretionary costs and fees other than those for the expense for a court-appointed attorney." *People v Wallace*, 284 Mich App 467, 470; 772 NW2d 820 (2009). But see MCL 769.1k(10) ("A defendant must not be imprisoned, jailed, or incarcerated for the nonpayment of costs ordered under this section unless the court determines that the defendant has the resources to pay the ordered costs and has not made a good-faith effort to do so.").

With regard to attorney fees, the prosecution correctly observes that under *People v Jackson*, 483 Mich 271, 298; 769 NW2d 630 (2009), the trial court was permitted to impose attorney fees regardless of defendant's financial situation because an "ability-to-pay assessment is only necessary when that imposition is enforced and the defendant contests his ability to pay." Thus, defendant is incorrect that there was any error with the trial court's imposing attorney fees at sentencing.

However, after sentencing, the trial court signed a remittance order stating that funds would be collected in accordance with MCL 769.1*l*. This order, coupled with the fact that defendant subsequently contested his ability to pay the attorney fees, triggered the need for an ability-to-pay assessment. See *Jackson*, 483 Mich at 298. Defendant offered specific arguments for why he was unable to pay, even in prison. But the trial court did not provide any analysis or clear determination regarding defendant's ability to pay attorney fees in its order, stating only that defendant was seeking a waiver of "fees" because of his indigency, and that the court "elects to maintain" the "fees." This was error. The trial court does have substantial discretion in evaluating whether a prisoner is unable to pay his or her remittance order, see *id.* at 297, but it still is obliged to show that it actually made that determination, and the pertinent order in this case provides no such indication.[9]

---

[9] We note that our Supreme Court has approved of the presumption inherent in the MCL 769.1*l* procedure—given that the prison provides most of the prisoner's needs, and that the prisoner may

-11-

To summarize, for the reasons stated, the trial court did not err by failing to waive court costs. However, the trial court erred by failing to provide factual bases for the court costs and attorney fees, and by failing to conduct an ability-to-pay assessment for the attorney fees.[10]

On remand, the trial court should articulate a factual basis for both the court costs and the attorney fees. The court costs must be shown to be "reasonably related to the actual costs incurred by the trial court," but the trial court need not "separately calculate[e] those costs involved in the particular case." MCL 769.1k(1)(b)(*iii*). Further, the attorney fees must have "findings of fact in support of that amount." *Lewis*, 503 Mich at 164. Such findings may include, among other things, "the nature and number of the criminal charges." *Id*. at 168.

The trial court also should adjudicate defendant's "claim that his individual circumstances rebut § 1*l*'s presumption of nonindigency," *Jackson*, 483 Mich at 297, with respect to his remittance payments related to his attorney fees. The trial court is "under no obligation to hold any formal proceedings," *id*., but at the least should consider the argument that defendant presented in his motion with regard to his ability to pay while in prison, and announce a decision on whether remittance payments should be altered on the basis of defendant's ability to pay his attorney fees and attendant late penalty.

### III.  CONCLUSION

The trial court did not err by granting defendant 57 days of jail credit under MCL 769.11b. However, the trial court erred by not providing a factual basis for the court costs and attorney fees, and by not articulating a determination regarding defendant's ability to pay his attorney fees and any attendant late penalty. Therefore, we affirm the trial court in part, vacate in part, and remand to that court for further proceedings consistent with our opinion. We do not retain jurisdiction.

/s/ Daniel S. Korobkin
/s/ Michael J. Riordan
/s/ Philip P. Mariani

---

still keep $50 a month, plus half of anything more than that, it is presumed that prison remittance orders following that formula do not run afoul of the prisoner's ability to pay. *Jackson*, 483 Mich at 295. The Court cautioned "that the imprisoned defendant bears a heavy burden of establishing his extraordinary financial circumstances." *Id*. at 296. The trial court need only amend the remittance order's assessment if it determines that the defendant has provided "evidence that enforcement would impose a manifest hardship on the prisoner or his immediate family." *Id*. at 297.

[10] By extension, the trial court erred by failing to conduct an ability-to-pay assessment for the portion of the late penalty based on attorney fees as well.